IN RE: CRYSTAL GAIL BRODE, STEVEN W. BRODE, MATTHEW L. BRODE, JUVENILES

No. COA01-214

(Filed 6 August 2002)

**Child Support, Custody, and Visitation— custody—foreign judgment—emergency jurisdiction**

Although the trial court in this state had emergency jurisdiction to enter a temporary order in a child custody case, the trial court's order is vacated because: (1) the trial court's order is not temporary as required by N.C.G.S. § 50A-204(a); (2) the trial court had notice of the existence of a prior custody decree from Texas awarding respondent father custody of the minor child; and (3) the trial court was required by the Parental Kidnapping Prevention Act to defer any further proceedings in the matter

pending a response from Texas as to whether that state was willing to assume jurisdiction to resolve the issues of neglect and dependency.

Appeal by respondent from order entered 16 November 2000 *nunc pro tunc* 25 September 2000, by the Honorable Pattie S. Harrison in Caswell County District Court. Heard in the Court of Appeals 6 December 2001.

*Farmer & Watlington, LLP, by Stuart N. Watlington, for petitioner-appellee Caswell County Department of Social Services.*

*David G. Powell for respondent-appellant William Harvey.*

BRYANT, Judge.

Steven W. Brode was born 19 August 1991 in the state of Texas to respondent William Harvey and Beverly Brode Owen. While other children were born to Harvey and Owen, these children are not the subject of this appeal.[1]

Harvey and Owen lived together in Texas as domestic partners. In 1997, Children's Protection Services of Montgomery County, Texas, filed a petition in the district court to determine the parent-child relationship between Harvey, Owen and the Brode children. By order entered 31 July 1998, the District Court of Montgomery County appointed Harvey sole managing conservator of Steven, having all the incidents of sole legal custody. By that same order, Owen was appointed as Steven's possessory conservator with visitation as agreed to by Harvey. After entry of this order, Steven resided with Harvey at Harvey's parents' home in Barcarolle, Texas.

In or about August 1999, Owen made an unannounced visit to Harvey's home. She falsely told Harvey's father that visitation was permitted; thereafter, she abducted Steven and never returned him to Harvey. Owen subsequently moved to Caswell County, North Carolina, bringing Steven and the other children with her. Harvey made efforts to ascertain Owen's whereabouts, including seeking assistance from Texas officials. Harvey ceased efforts to locate Owen and the children after becoming discouraged that assistance would not be forthcoming from Texas officials.

---

1. Harvey and Owen are the parents of Crystal G. Brode, born 24 May 1990. Owen is also the mother of Matthew L. Brode, born 31 January 1994. Harvey is not the father of Matthew L. Brode.

In August 2000, Caswell County Department of Social Services (DSS) filed a petition alleging Steven to be a neglected and dependent juvenile. The petition asserted that Steven Brode did not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; that he had been abandoned; and, that he lived in an environment injurious to his welfare. At an adjudication hearing held 25 September 2000, the trial court found Steven to be a neglected and dependent juvenile and placed Steven in DSS custody. Harvey appeals.

Respondent-Appellant Harvey assigns as error the trial court's failure to grant full faith and credit to the Texas order granting custody of Steven Brode to respondent-appellant Harvey.

At the outset, this appeal requires that we examine the interplay of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA),[2] the North Carolina Juvenile Code,[3] and the Parental Kidnapping Prevention Act (PKPA).[4]

## UCCJEA and Juvenile Code

The UCCJEA, formerly UCCJA, is a jurisdictional statute relating to child custody disputes and expressly includes proceedings in abuse, dependency, and/or neglect. *See In re Van Kooten*, 126 N.C. App. 764, 768, 487 S.E.2d 160, 162-63 (1997). The jurisdictional requirements of the UCCJEA must be satisfied for a court to have authority to adjudicate abuse, neglect, and dependency petitions filed pursuant to our Juvenile Code, *see id.* at 764, 487 S.E.2d at 163, even though the Juvenile Code provides that the district courts of North Carolina have " 'exclusive, original jurisdiction over any case involving a juvenile who is alleged to be . . . abused, neglected, or dependent.' " *In re Malone*, 129 N.C. App. 338, 342, 498 S.E.2d 836, 838 (1998) (alteration in original) (citation omitted). *See also In re Van Kooten* at 768, 487 S.E.2d at 162.

Prior to the 1999 revisions to the UCCJEA, a district court in North Carolina could exercise jurisdiction under the UCCJEA to

---

2. Adopted by North Carolina and codified in Chapter 50A of the North Carolina General Statutes.

3. Chapter 7B of the North Carolina General Statutes.

4. 28 U.S.C.A. § 1738A. We note that on one instance we cite to the 1994 hard bound version of § 1738A. Section 1738A has since been amended. See 28 U.S.C.A. § 1738A (West Supp. 2002).

make child custody determinations if: (1) this State was the home state of the child; (2) it was in the best interest of the child because the child and the child's parents had a significant connection with this State; (3) the child was physically present in this State and it was necessary in an emergency to protect the child because the child had been subjected to or threatened with mistreatment or abuse; or (4) it appeared that no other state would have jurisdiction or another state had declined to exercise jurisdiction. *See In re Malone* at 343, 498 S.E.2d at 839 (citing N.C.G.S. § 50A-3(a) (1989)). *See also In re Van Kooten* at 769, 487 S.E.2d at 163; *In re Bean,* 132 N.C. App. 363, 366, 511 S.E.2d 683, 686 (1999). In 1999, the emergency jurisdiction provision (N.C.G.S. § 50A-3(a)) was moved to a new and separate section, N.C.G.S. § 50A-204. *See* 1999 N.C. Sess. Laws 223, s. 15.

Under N.C.G.S. § 50A-204(a), temporary emergency jurisdiction may be invoked by a court if a "child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." N.C.G.S. § 50A-204(a) (2001). The statute further provides in N.C.G.S. § 50A-204(c)-(d):

> (c) If there is a previous child-custody determination that is entitled to be enforced under this Article, . . . any order issued by a court of this State under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction . . . . The order issued in this State remains in effect until an order is obtained from the other state within the period specified or the period expires.

> (d) A court of this State which has been asked to make a child-custody determination under this section, upon being informed that a . . . child-custody determination has been made by, a court of [another] state . . . shall immediately communicate with the other court.

N.C.G.S. § 50A-204(c)-(d) (2001).

When a court invokes emergency jurisdiction, any orders entered shall be temporary protective orders only. *In re Malone* at 343, 498 S.E.2d at 839; *see also Nadeau v. Nadeau,* 716 A.2d 717, 723-24 (R.I. 1998) (stating that assumption of emergency jurisdiction under the UCCJA is temporary jurisdiction only and confers authority only to make temporary orders); *In re A.L.H.,* 630 A.2d 1288, 1291 (Vt. 1993)

(concluding that most all courts agree that emergency jurisdiction does not authorize courts to make permanent custody orders); *In re Interest of L.W.*, 486 N.W.2d 486, 498 (Neb. 1992) (stating the power of emergency jurisdiction does not include making permanent custody determinations or modifications of another court's custody decree).

## PKPA

Our State's jurisdiction over child custody matters is also governed by the PKPA. *See In re Bean* at 366, 511 S.E.2d at 686. The PKPA represents Congress's attempt to create a uniform standard among the states in their exercise of jurisdiction over interstate custody disputes. *See In re Malone* at 342, 498 S.E.2d at 838-39. The PKPA provides that "every State shall enforce . . . and shall not modify . . . any custody determination or visitation determination made . . . by a court of another State." 28 U.S.C.A. § 1738A(a) (2002). The act further provides that "[t]he jurisdiction of a court of a State which has made a child custody determination or visitation determination . . . continues as long as . . . such State remains the residence of the child or of any contestant." 28 U.S.C.A. § 1738A(d) (2002). Modifications of another state's custody determination may only be made if the modifying state "has jurisdiction to make such a child custody determination; *and* [] the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." 28 U.S.C.A. § 1738A(f) (1994) (emphasis added). To the extent a state custody statute conflicts with the PKPA, the federal statute controls. *In re Bean* at 366, 511 S.E.2d at 686.

" 'Although the PKPA does not include within its definition section any reference to neglect, abuse, or dependency proceedings,' " our court has previously held that the PKPA does apply " 'to all interstate custody proceedings affecting a prior custody award by a different State, including [abuse,] neglect and dependency proceedings.' " *In re Malone* at 342, 498 S.E.2d at 839 (alteration in original) (citations omitted).

We note that the trial court order in the instant case is silent as to the basis for its jurisdiction to adjudicate this case. The petition filed by DSS alleges that Steven Brode is a neglected and dependent juvenile.[5] It appears that the court proceeded under the general juris-

---

5. Specifically, the petition asserts that Steven Brode is neglected in that he (1) "does not receive proper care, supervision, or discipline from the juvenile's parent,

**IN RE BRODE**

[151 N.C. App. 690 (2002)]

diction of the Juvenile Code; however, when a prior custody order exists, a court cannot ignore the provisions of the UCCJEA and the PKPA.

The order of the trial court does state that in placing the juveniles in the protection of social services "DSS was precluded from making reasonable efforts [to return juveniles to their parents] due to the threat of immediate harm to said juveniles; that the failure to make such reasonable efforts was reasonable under the circumstances, and to do otherwise would have been contrary to the health, safety and welfare of said juveniles." Even in the absence of explicit language that the trial court invoked the emergency jurisdictional parameters of N.C.G.S. § 50A-204, we find that the language used by the court indicated an immediate need necessitating protection of the juveniles; therefore, the trial court was within its power to invoke the exercise of emergency jurisdiction to protect the children and we find that further evaluation of the order will proceed under this determination.

As noted in our discussion above, when a trial court invokes emergency jurisdiction under the UCCJEA, such jurisdiction is only temporary in nature and does not empower the trial court to enter a permanent custody order. Further, when it is discovered that a previous child custody determination has been made by another court, the provisions of N.C.G.S. § 50A-204(c)-(d), and the PKPA, set the parameters for addressing any custody determination. We find that the order entered by the trial court in the instant case does not comply with our statutory framework.

First, the order entered by the trial court is not a temporary order as required by N.C.G.S. § 50A-204(a). The heading of the judgment is titled "Order" and the directives are noted to be "Ordered, Adjudged and Decreed." The order is void of any language to indicate that it is temporary in nature. Second, the trial court had notice of the existence of a prior custody decree awarding Harvey custody of Steven Brode. The custody order entered in Texas outlines the rights and

---

guardian, custodian, or caretaker;" (2) "has been abandoned;" and (3) "lives in an environment injurious to the juvenile's welfare."

The petition asserts that he is dependant in that he "needs assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision."

duties of a sole managing conservator, which appear to encompass those duties that would award sole legal custody of the juvenile.[6]

Pursuant to N.C.G.S. § 50A-204(d), after having notice of the prior custody order, and upon entry of a temporary custody order, the trial court should have immediately contacted the Texas court to determine their willingness to assume jurisdiction. "While the trial court in this state did have emergency jurisdiction to enter the temporary . . . order, at the point in which the order was entered 'the trial court was required to defer any further proceedings in the matter pending a response from [Texas] as to whether that state was willing to assume jurisdiction to resolve the issues of [neglect and dependency].' " *In re Malone* at 344, 498 S.E.2d at 840 (citation omitted).

Likewise, with respect to the parameters of the PKPA, we noted above that the act precludes states from modifying child custody orders of other states unless the court of the other State no longer has jurisdiction, or it has declined to exercise its jurisdiction. The trial court's order is inconsistent with the requirements of the PKPA. The order does not defer adjudication on the merits pending notice from Texas concerning whether it will exercise jurisdiction in the matter.

---

6. According to the custody order, a sole managing conservator has the following rights and duties:

    (1) the right to have physical possession and to direct the moral and religious training of the child;

    (2) the duty of care, control, protection, and reasonable discipline of the child;

    (3) the duty to provide the child with clothing, food, shelter, education, and medical, psychological, and dental care;

    (4) the right to consent for the child to medical, psychiatric, psychological, dental, and surgical treatment;

    (5) the right to receive and give receipt for payments for the support of the child and to hold or disburse funds for the benefit of the child;

    (6) the right to the services and earnings of the child;

    (7) the right to consent to marriage and to enlistment in the armed forces of the United States;

    (8) the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

    (9) the right to act as an agent of the child in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government; and

    (10) the right to establish the primary residence of the child and to make decisions regarding the child's education.

In light of the foregoing, we vacate the judgment of the trial court. On remand, the trial court is directed to contact the Texas court to determine whether that court desires to exercise jurisdiction in this matter. Should the Texas court decline to exercise jurisdiction, the trial court may then proceed on the merits of the DSS petition and issue a final custody determination.

VACATED and REMANDED for findings consistent with this opinion and dictates of the UCCJEA and PKPA.

Judges McGEE and HUNTER concur.