635 S.E.2d 8 (2006)
In the Matter of M.B.
No. COA05-1642.
Court of Appeals of North Carolina.
September 19, 2006.
Deputy County Attorney Thomas W. Jordan, Jr., for Durham County Department of Social Services, petitioner-appellee.
Nelson Mullins Riley & Scarborough LLP, by Stephen D. Martin, Raleigh, for Guardian ad Litem.
Winifred H. Dillon, Garner, for respondent-father-appellant.
*9 JACKSON, Judge.
Respondent father appeals from an order entered 17 June 2005 that adjudicated respondent father's child, M.B., neglected and placed her in the temporary legal custody of the Durham County Department of Social Services ("DSS").
On 4 November 2004, M.B. was born in New York. In February 2005, respondent father moved to Durham, North Carolina. On 28 March 2005, M.B. and M.B.'s mother, Toni H., relocated to Durham, North Carolina. M.B. and her mother moved in with M.B.'s maternal relative, Tanya Lindsey ("Lindsey").
On 8 April 2005, M.B.'s mother and respondent father had an argument at Lindsey's residence. During the argument, M.B.'s mother grabbed a knife from the kitchen and chased respondent father into the parking lot with it. Lindsey took the knife away from M.B.'s mother and calmed her down. M.B.'s mother, however, grabbed M.B. and started putting clothes on her in order to leave Lindsey's residence. When Lindsey attempted to persuade her not to leave, M.B.'s mother threatened to kill M.B. Specifically, she "threatened to throw the baby [M.B.] out" and stated that she could do whatever she wanted with M.B. because M.B. was her child. Later that day, respondent father returned home and the family held a meeting, during which M.B.'s mother and Lindsey signed a safety assessment providing that: (1) Lindsey would be the primary caregiver for M.B.; (2) Lindsey would not allow M.B.'s mother to leave Lindsey's home with M.B.; and (3) Lindsey would call the police if M.B.'s mother attempted to remove M.B. from Lindsey's residence.
Lindsey remained the primary caregiver for approximately two weeks until 21 April 2005, when Lindsey decided that she would no longer allow M.B.'s mother to live with her at her residence. Lindsey also determined that she could no longer care for M.B. M.B.'s mother threatened to take M.B. with her if she had to leave, and Lindsey called the police. The police were able to get M.B. back from her mother, who in turn threatened to have Lindsey's house "shot up."
The following day, on 22 April 2005, DSS filed a petition alleging that M.B. was a neglected child, and the trial court entered an order placing M.B. in the nonsecure custody of DSS.[1] Respondent father made a Motion to Dismiss DSS' petition for lack of subject matter jurisdiction, and the trial court denied the motion.
On 1 and 2 June 2005, the Honorable James T. Hill presided over a hearing on DSS' petition alleging neglect. On 17 June 2005, the trial court entered an order providing that: (1) temporary emergency jurisdiction existed under North Carolina General Statutes, section 50A-204 due to threats of mistreatment of M.B. by her mother; (2) M.B. was a neglected child; and (3) M.B. was to be placed in DSS' temporary legal custody. Furthermore, the trial court ordered that M.B.'s mother, respondent father, and DSS should provide any and all information and paperwork in relation to an alleged New York court proceeding concerning M.B., as such a proceeding may impact the trial court's subject matter jurisdiction.
On 12 July 2005, respondent father filed a written Notice of Appeal from the court's 17 June 2005 order. On 22 September 2005, the *10 Guardian ad Litem filed a Motion to Dismiss respondent father's appeal for failure to file a timely Notice of Appeal, and on 30 September 2005, the trial court granted the Guardian ad Litem's Motion to Dismiss. On 4 November 2005, this Court allowed respondent father's petition for writ of certiorari. Between the date respondent father filed his Notice of Appeal and the date this Court granted certiorari, DSS received a letter from Westchester County, New York, stating that there are no pending matters or any orders regarding M.B. Furthermore, the trial court entered an order on 10 October 2005 providing that (1) North Carolina is now the home state of M.B. because M.B. has been in North Carolina for over six months; and (2) the temporary child custody determination entered on 17 June 2005 is now the final order of custody.
Subject matter jurisdiction, a threshold requirement for a court to hear and adjudicate a controversy brought before it, "`is conferred upon the courts by either the North Carolina Constitution or by statute.'" In re McKinney, 158 N.C.App. 441, 443, 581 S.E.2d 793, 795 (2003) (quoting Harris v. Pembaur, 84 N.C.App. 666, 667, 353 S.E.2d 673, 675 (1987)). Pursuant to section 7B-200(a) of the North Carolina General Statutes, the district courts of North Carolina "ha[ve] exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen.Stat. § 7B-200(a) (2005). Additionally, "[t]he court shall have jurisdiction over the parent or guardian of a juvenile who has been adjudicated abused, neglected, or dependent . . . provided the parent or guardian has been properly served with summons." N.C. Gen.Stat. § 7B-200(b) (2005). In the case sub judice, both the mother and respondent father were served personally with the summons and petition of 25 April 2005, and the proceeding was properly "commenced in the district in which the juvenile resides or is present." N.C. Gen.Stat. § 7B-400 (2005).
This Court has held that "[t]he jurisdictional requirements of the [Uniform Child Custody Jurisdiction and Enforcement Act] must be satisfied for a court to have authority to adjudicate . . . petitions filed pursuant to our Juvenile Code, even though the Juvenile Code provides that the district courts of North Carolina have exclusive, original jurisdiction over any case involving a juvenile." In re Brode, 151 N.C.App. 690, 692, 566 S.E.2d 858, 860 (2002) (citations and internal quotation marks omitted). The UCCJEA, which is designed to "provide[] a uniform set of jurisdictional rules and guidelines for the national enforcement of child custody orders," In re Q.V., 164 N.C.App. 737, 739, 596 S.E.2d 867, 869, cert. denied, 358 N.C. 732, 601 S.E.2d 859 (2004), is codified in Chapter 50A of the North Carolina General Statutes.
Pursuant to North Carolina's UCCJEA, a district court in North Carolina may exercise jurisdiction to make child custody determinations if: (1) North Carolina is the child's home state; (2) it is in the best interest of the child because the child and the child's parents have a significant connection with North Carolina; or (3) no other state has jurisdiction or another state has declined to exercise jurisdiction. See N.C. Gen.Stat. § 50A-201 (2005); see also Brode, 151 N.C.App. at 692-93, 566 S.E.2d at 860. Furthermore, section 50A-204(a) provides that a court of this State may invoke temporary emergency jurisdiction "if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." N.C. Gen.Stat. § 50A-204(a) (2005). As this Court clarified in interpreting the UCCJA, the predecessor to the UCCJEA,
[i]n the absence of a previous custody decree from another state which has continuing jurisdiction, any orders entered pursuant to the exercise of emergency jurisdiction shall be temporary pending application to any state having either "home state" or "significant connection" jurisdiction. In the event no other state has jurisdiction or has jurisdiction and is unwilling to exercise that jurisdiction, the courts of this State are authorized to enter any adjudicatory and/or dispositional orders within the meaning of the Juvenile Code, temporary or permanent. *11 In re Van Kooten, 126 N.C.App. 764, 769-70, 487 S.E.2d 160, 163 (1997) (emphasis added), appeal dismissed, 347 N.C. 576, 502 S.E.2d 618 (1998).
In the present case, the trial court concluded that temporary emergency jurisdiction existed pursuant to section 50A-204 based upon threats of mistreatment of the child by the mother. Emergency custody orders, such as in the case sub judice, "are absolutely critical in a world where children are subjected to mistreatment and abuse." Sheila L. ex rel. Ronald M.M. v. Ronald P.M., 195 W.Va. 210, 223, 465 S.E.2d 210, 223 (1995). Here, the trial court found as fact that M.B.'s mother and respondent father had an argument, during which she chased him with a knife. Additionally, M.B.'s mother threatened to kill M.B. and throw her out. The trial court properly found that M.B. was a neglected juvenile who was at risk in the care of her mother. The court also found that respondent father's incarceration contributed to the adjudication.
The requirements of UCCJEA were satisfied because M.B. was physically present in this State, and it was necessary in an emergency to protect M.B. because her mother had threatened mistreatment or abuse. Therefore, the trial court had subject matter jurisdiction pursuant to the Juvenile Code and the UCCJEA, and the trial court properly entered a temporary custody order pursuant to its temporary emergency jurisdiction.
We also note that any issue of temporary jurisdiction is now moot because M.B., M.B.'s mother, and respondent father have been physically present in North Carolina for more than six months. Specifically, the trial court entered an order on 10 October 2005, which neither M.B.'s mother nor respondent father appealed, finding that no custody order had been entered or was pending in any other state, and that M.B., her mother, and respondent father had lived in North Carolina from 28 March 2005 to 29 September 2005. Thus, North Carolina is now the home state under the UCCJEA, see N.C. Gen.Stat. § 50A-102(7) (2005) (defining "home state"), and as such, North Carolina courts have jurisdiction to determine child custody. See N.C. Gen.Stat. § 50A-201(a) (2005). Accordingly, in the Order on Jurisdiction dated 10 October 2005, the trial court properly ordered that North Carolina is the home state of M.B. and that the court's temporary custody determination had become a final order.
Therefore, the trial court did not err in entering a temporary custody order because the trial court properly exercised temporary emergency jurisdiction pursuant to section 50A-204. After M.B., M.B.'s mother, and respondent father had remained in North Carolina for more than six months, and when no custody orders were entered in any other state, North Carolina became the home state wherein the trial court had jurisdiction under the UCCJEA to enter orders adjudicating M.B. neglected. Accordingly, the trial court order is affirmed.
AFFIRMED.
Judges CALABRIA and GEER concur.
NOTES
[1] The trial court continued nonsecure custody with DSS by orders entered on 2 May 2005, 9 May 2005, and 24 May 2005.