IN RE S.D.H. & D.R.H.
No. COA06-1325
Court of Appeals of North Carolina.
Filed December 18, 2007
This case not for publication
Cumberland County Department of Social Services, by Staff Attorney John F. Campbell, for petitioner-appellee.
Duncan B. McCormick, for respondent-father.
Elizabeth Boone, for Guardian Ad Litem-appellee.
CALABRIA, Judge.
Father ("respondent") appeals from an order of the trial court terminating his parental rights to S.D.H. and D.R.H. (collectively, "the minor children"). We affirm.
Respondent and M.A.H. ("the mother") are the parents of the minor children. The children were born in Ohio and moved with the parents to Cumberland County, North Carolina in August of 2003. On 20 November 2003, the Cumberland County Department of Social Services ("CCDSS") social worker went to respondent's home and reported that she observed unsanitary and unsuitable conditions. Specifically, the minor children were filthy and appeared that they had not been bathed in several days. The carpet was filthy, catfeces was left on the floor, and food was discarded on several surfaces.
On 26 November 2003, CCDSS filed a juvenile petition alleging that D.R.H. lived in an environment where there was a history of domestic violence. The petition also alleged that the mother filed a complaint on 9 November 2003, alleging that respondent had punched and choked her in respondent's home in the presence of D.R.H. and V.G.F., another minor child. Respondent was arrested and held in the Cumberland County Jail. The trial court also ordered non-secure custody for D.R.H., placing custody with CCDSS.
On 14 January 2004, CCDSS filed a petition alleging that S.D.H., the other minor child, was neglected and dependent. The infant had not received appropriate medical care and her mother could not account for immunizations that had been received. On 22 January 2004, the trial court ordered non-secure custody for S.D.H. CCDSS retained legal custody and placed both children with respondent.
In February of 2004, respondent traveled to Ohio with the minor children. While respondent was in Ohio, CCDSS learned respondent became involved in a domestic dispute with the children's mother, was arrested, and incarcerated. Upon learning this information, CCDSS contacted the local law enforcement agency in Zanesville, Ohio and notified the social services department in Ohio ("Ohio DSS") that respondent had been arrested and the children were in legal custody. On 13 February 2004, Ohio DSS was ordered to take custody of the children until CCDSS could retrievethe children and return them to North Carolina. On 17 February 2004, CCDSS regained custody of the children and they were returned to North Carolina.
On 9 July 2004, the minor children were adjudicated neglected and legal and physical custody was continued with CCDSS. After a home study had been completed and approved, CCDSS was authorized to place the children with out-of-state relatives. On 1 September 2004, the judge entered a finding that the whereabouts of the minor children's parents were unknown, and the permanent plan was changed from reunification to placement with relatives or adoption. On 18 February 2005, the judge entered a finding that the children were residing with their maternal uncle and aunt in Oklahoma City, Oklahoma and that they were interested in adopting the children. At the end of the hearing, the permanent plan for the minor children was changed to adoption.
On 22 August 2005, CCDSS filed a petition to terminate both respondent and the mother's parental rights as to the minor children. On 4 April 2006, the trial court terminated the parental rights of both respondent and the mother on the basis of neglect, wilful abandonment, failure to make reasonable progress and failure to pay reasonable cost of care. Respondent appeals. The mother did not appeal the termination order.

I. Subject Matter Jurisdiction
Respondent first challenges whether the trial court had subject matter jurisdiction over the termination of the parental rights proceeding. "[S]ubject matter jurisdiction may be raised at any time by the parties or by the court ex mero motu." In re J.D.S., 170 N.C. App. 244, 248, 612 S.E.2d 350, 353, review denied by, 360 N.C. 64, 623 S.E.2d 584 (2005); N.C.R. App. P. 10(a) (2007). Jurisdiction over parental rights proceedings is governed by N.C. Gen. Stat. § 7B-1101 (2005) which provides:
The court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion. . . . Provided, that before exercising jurisdiction under this Article, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201, 50A-203, or 50A-204.
Respondent argues the trial court did not have subject matter jurisdiction because it failed to find jurisdiction pursuant to either N.C. Gen. Stat. §§ 50A-201, 50A-203, or 50A-204. We disagree.
Sections 50A-201, 50A-203 and 50A-204 are found under the Uniform Child-Custody Jurisdiction and Enforcement Act ("the UCCJEA"). The purpose of the UCCJEA is to avoid jurisdictional competition and conflict with other States regarding custody orders and other decrees that determine the best interest of the child. This Court has held that
[t]he jurisdictional requirements of the UCCJEA must be satisfied for a court to have authority to adjudicate abuse, neglect, and dependency petitions filed pursuant to ourJuvenile Code even though the Juvenile Code provides that the district courts of North Carolina have "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be . . . abused, neglected, or dependent."
In re Brode, 151 N.C. App. 690, 692, 566 S.E.2d 858, 860 (2002) (internal citation omitted) (citations omitted).
Pursuant to North Carolina's UCCJEA, a district court "may exercise jurisdiction to make child custody determinations if: (1) North Carolina is the child's home state; (2) it is in the best interest of the child because the child and the child's parents have a significant connection with North Carolina; or (3) no other state has jurisdiction or another state has declined to exercise jurisdiction." See N.C. Gen. Stat. § 50A-201 (2005); In re M.B., 179 N.C. App. 572, 575, 635 S.E.2d 8, 10 (2006). A district court may also exercise jurisdiction pursuant to N.C. Gen. Stat. § 50A-204 "if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." N.C. Gen. Stat. § 50A-204(a) (2005).
"The exercise of emergency jurisdiction, however, confers authority to enter temporary protective orders only, pending application to a state having previously rendered a child custody decree under statutory provisions substantially in accordance with Chapter 50A and continuing to have jurisdiction under jurisdictional prerequisites substantially in accordance with Chapter 50A." In re Van Kooten, 126 N.C. App. 764, 769, 487 S.E.2d160, 163 (1997) (internal citations and quotations omitted). In Van Kooten, this Court interpreted the Uniform Child Custody Jurisdiction Act ("UCCJA"), the prior version of the UCCJEA. It stated:
In the absence of a previous custody decree from another state which has continuing jurisdiction, any orders entered pursuant to the exercise of emergency jurisdiction shall be temporary pending application to any state having either "home state" or "significant connection" jurisdiction. In the event no other state has jurisdiction or has jurisdiction and is unwilling to exercise that jurisdiction, the courts of this State are authorized to enter any adjudicatory and/or dispositional orders within the meaning of the Juvenile Code, temporary or permanent.
Van Kooten, 126 N.C. App. at 769-70, 487 S.E.2d at 163. This Court determined that the trial court went beyond its temporary authority to issue non-secure orders because it failed to contact the court of the home state of the children to determine whether the home state would assume jurisdiction over the children. Id., 126 N.C. App. at 771, 487 S.E.2d at 164. After the trial court entered a temporary non-secure order, it "was required to defer any further proceedings in the matter pending a response from Iowa as to whether that state was willing to assume jurisdiction to resolve the issues of abuse, neglect, and dependency." Id.
In the case sub judice, the children resided in North Carolina for three months when the court issued the non-secure custody order in November of 2003. Thus, the trial court did not have subject matter jurisdiction pursuant to § 50A-201 because North Carolina did not qualify as the home state for either child. However, therecord supports a determination that the trial court had temporary emergency jurisdiction pursuant to § 50A-204. Both children were present in North Carolina at the time the trial court entered its order. Further, the court found a sufficient factual basis that the children were not receiving adequate care or supervision and were living in an environment where they were exposed to domestic violence. The trial court possessed jurisdiction over the children pursuant to the emergency provisions of § 50A-204. The requirements of the UCCJEA were satisfied because the minor children were physically present in this State, and it was necessary for the court to assume jurisdiction in an emergency to protect the minor children because the children were exposed to domestic violence and were not receiving appropriate medical care. Upon obtaining emergency jurisdiction, the subsequent apparent acquiescence by Ohio in returning the children to the care of CCDSS in February 2004 is sufficient to meet the requirements set out in Van Kooten to retain jurisdiction for permanent disposition in regards to the custody of the children.

II. Wilful Abandonment
Respondent argues the trial court erred by terminating his parental rights on the basis of neglect, wilful abandonment, failure to make reasonable progress, and failure to pay a portion of the cost of care. Because we determine that at least one ground for termination of parental rights has been established, we disagree. "A termination of parental rights proceeding consists of two phases." In re Shermer, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003). "In the adjudicatory stage, the petitioner . . . has the burden of proving by clear, cogent, and convincing evidence at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111." Id. "We review whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." Id. Once the trial court finds at least one ground for termination, the trial court moves to the dispositional stage. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). At the dispositional stage, the trial court considers whether termination of parental rights is in the best interest of the child. In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "We review the trial court's decision to terminate parental rights for abuse of discretion." Id.
Grounds exist for the termination of a parent's rights when there is clear, cogent and convincing evidence that a "parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2005). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." In reMcMillon, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001) (citation omitted).
In this case, CCDSS mailed a case plan to respondent that required him to maintain a clean housing environment, maintain adequate income, submit to random drug screens, participate in child care classes, participate in psycho-social assessment, and seek professional help regarding anger management issues. There is no evidence that respondent complied with any of the requirements of the case plan. Specifically, respondent did not attend child care classes, participate in a psycho-social assessment, or receive professional guidance to assist him in anger management. Although respondent argues he did not wilfully abandon his children because he was under the impression that he could not contact his children, respondent was still under the duty to complete the goals set by the case plan regardless of his ability to contact the children. Respondent had the ability to show reasonable progress and meet the goals set by CCDSS. His lack of progress shows wilful abandonment of his children. Therefore, the trial court's finding was supported by clear, cogent and convincing evidence.

III. Failure to Pay a Reasonable Portion of the Cost of Care
Respondent also argues the trial court erred by concluding he wilfully failed to pay a reasonable portion of the cost of care. We disagree.
Pursuant to N.C. Gen. Stat. § 7B-1111(a)(3), a court may terminate a parent's parental rights if the child has been in the care of CCDSS "for a continuous period of six months next precedingthe filing of the petition or motion, [and] has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." Id. "'A finding that a parent has ability to pay support is essential to termination for nonsupport' pursuant to N.C. Gen. Stat. § 7B-1111(a)(3)." In re T.D.P., 164 N.C. App. 287, 289, 595 S.E.2d 735, 737 (2004).
In this case, the trial court found, and respondent concedes, that he maintained employment with Mid South in Ohio from March of 2004 until December of 2004 and received an income that ranged from $500.00 to $700.00 per week. Also, respondent earned approximately $214.00 per week by working for an amusement company. Further, the trial court specifically found that at all times during the pendency of the case, respondent was financially capable of providing support for the children. However, respondent argues the trial court erred by not making a finding regarding the reasonable cost of care for the children. This assertion is without merit.
The applicable rule of law has consistently required a finding as to whether the parent had the ability to pay a "reasonable portion of the cost of care for the child" and not a finding regarding the amount of the reasonable cost of care. In re Clark, 151 N.C. App. 286, 288, 565 S.E.2d 245, 247 (2002) (In determining what constitutes a reasonable portion of the cost of care, the parent's ability to pay is the "controlling factor."). Here, the trial court's finding that respondent had the ability to pay a portion of the cost of care but failed to do so is supported byclear, cogent and convincing evidence. This assignment of error is overruled.

IV. The Best Interests of the Children
Respondent also argues that the trial court abused its discretion by concluding that it was in the best interests of the minor children for respondent's parental rights to be terminated. We disagree.
"After the trial court has determined grounds exist for termination of parental rights at adjudication, the court is required to issue an order of termination in the dispositional stage, unless it finds the best interests of the child would be to preserve the parent's rights." Blackburn, 142 N.C. App. at 613, 543 S.E.2d at 910 (citation omitted). "This would ordinarily create a presumption for the issuance of the termination order once a termination ground has been established." Id. In determining whether terminating the parent's rights is in the best interest of the child, the trial court shall consider the following factors:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2005). The trial court is not required to make findings of fact at the dispositional phase. Blackburn, 142 N.C. App. at 613, 543 S.E.2d at 910. However, "such findings and conclusions must be made upon any determination that the best interests of the child require that rights not be terminated." Id. (emphasis in original). "We review the trial court's decision to terminate parental rights for abuse of discretion." Anderson, 151 N.C. App. at 98, 564 S.E.2d at 602.
In this case, there was evidence that the minor children were very young when placed in the care of relatives, and that the relatives expressed an interest in adopting the children. Also, there was no evidence of a significant bond between the children and respondent. The children were very young when they were removed from the home and respondent had not maintained contact with the children. The fact that respondent only contacted the children after the termination petition had been filed, contacted CCDSS and signed a new case plan, and began having counseling sessions with his pastor does not overcome the presumption that it is in the best interests of the children for his rights to be terminated. Respondent has failed to show the trial court abused its discretion by determining that it was in the best interests of the children to terminate respondent's parental rights.
Because we have determined that grounds existed to terminate respondent's parental rights on the basis of wilful abandonment and failure to pay a reasonable portion of the cost of care, we neednot address respondent's remaining arguments. The order of the trial court is affirmed.
Affirmed.
Judge TYSON concurs.
Judge WYNN concurs in the result only.
Report per Rule 30(e).