IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-796

Filed 05 July 2023

Guilford County, Nos. 21 JA 4–5

IN THE MATTER OF:

N.B., N.W.

Appeal by respondent-mother from order entered 1 July 2022 by Judge Angela C. Foster in Guilford County District Court. Heard in the Court of Appeals 6 June 2023.

*Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*

*Administrative Office of the Courts, by GAL Appellate Counsel Matthew D. Wunsche, for guardian ad litem.*

*Mary McCullers Reece for respondent-appellant mother.*

ZACHARY, Judge.

Respondent-Mother appeals from the trial court's order adjudicating her child "Nancy"[1] to be a neglected and dependent juvenile, and her child "Nell" to be an abused and neglected juvenile, and maintaining the children's placement in the custody of the Guilford County Department of Health and Human Services ("DHHS"). She argues that the trial court lacked subject-matter jurisdiction over these

---

[1] Consistent with the parties' stipulation, we use pseudonyms to protect the identities of the juveniles in accordance with N.C.R. App. P. 42(b).

proceedings. After careful review, we affirm.

## I.    Background

In 2020, Respondent-Mother lived in Tacoma, Washington, with her four children and her husband, who is the legal father of Nancy, her youngest daughter.[2] In or around October 2020, Respondent-Mother separated from her husband, and shortly afterward began the process of relocating with her children to North Carolina. At the end of October, Nell's aunt traveled to Tacoma to pick up Nell and one of Respondent-Mother's older children, and returned to High Point with them.

On 10 December 2020, DHHS received a report that Nell had disclosed to her aunt that she had been sexually abused by her stepfather, Respondent-Mother's husband. In January 2021, Respondent-Mother brought Nancy and another of her older children to live with relatives in Winston-Salem. DHHS contacted Respondent-Mother on 7 January and informed her of Nell's disclosure, but Respondent-Mother told the social worker that Nell had lied before and that she did not trust Nell's aunt. Respondent-Mother refused to complete a safety assessment with DHHS, and DHHS was unable to complete a child and family team meeting with Respondent-Mother.

After the family moved to North Carolina, Respondent-Mother's two older children relocated to Pennsylvania to live with their father. Respondent-Mother also

---

[2] As the trial court found as fact, the paternity of Nancy "ha[d] not been established through DNA paternity testing" as of the adjudication and disposition hearing; however, Respondent-Mother's husband is listed as Nancy's father on her birth certificate.

traveled to Pennsylvania with Nancy.

On 19 January 2021, DHHS filed juvenile petitions regarding all four of Respondent-Mother's children. DHHS alleged that Nell was an abused, neglected, and dependent juvenile; the other children were alleged to be neglected and dependent juveniles. By order entered that day, the trial court granted DHHS nonsecure custody of Nancy and Nell, but not the older children.[3] Nell was placed with her aunt, but DHHS was unable to take custody of Nancy, as she was in Pennsylvania with Respondent-Mother when DHHS filed the juvenile petitions.

Respondent-Mother and Nancy returned to North Carolina and appeared before the trial court on 4 February 2021, at which point DHHS took custody of Nancy and placed her with Nell's aunt as well. In its initial orders regarding the need for continued nonsecure custody of Nancy and Nell, the trial court indicated that it possessed temporary emergency jurisdiction pursuant to N.C. Gen. Stat. § 50A-204 (2021).

On 31 March 2022, the matter came on for adjudication and disposition hearings in Guilford County District Court. By then, Respondent-Mother had relocated to Charlotte and obtained housing through an organization assisting victims of domestic violence. She also completed the public housing application

---

[3] DHHS ultimately filed a voluntary dismissal of the juvenile petitions regarding the older children, after it determined "that there were no safety concerns with the [Pennsylvania] home or with the[ir] father[.]"

process and was placed on the waiting list for public housing in High Point. Nell's father was incarcerated in Pennsylvania and participated in the hearings by teleconference. However, Nancy's father did not participate in the hearings; he had not yet been served with the juvenile petitions, as his whereabouts were unknown.

On 6 July 2022, the trial court filed its adjudication and disposition order. As regards its jurisdiction over the matter, the trial court concluded:

> At the time of the filing of the juvenile petition[s], [DHHS] was acting under Temporary Emergency Jurisdiction pursuant to [N.C. Gen. Stat.] § 7B-500 and [N.C. Gen. Stat.] § 50A-204. However, at the time of the Adjudication Hearing, North Carolina had obtained Home State Jurisdiction pursuant to [N.C. Gen. Stat.] § 50A-102(7) in that both juveniles and [Respondent-M]other had lived in the State of North Carolina without interruption for a period exceeding six months and there was no existing Custody Order from any other State.

The trial court adjudicated Nancy as a neglected and dependent juvenile, and Nell as a neglected and abused juvenile. The trial court continued DHHS's custody of Nancy and Nell, suspended Respondent-Mother's visitation with them, and relieved DHHS of its obligation to make reasonable efforts to reunify them with Respondent-Mother. Respondent-Mother timely filed notice of appeal.

## II. Discussion

Respondent-Mother argues that the trial court erred by entering the adjudication and initial disposition order because "North Carolina did not have jurisdiction to enter non-temporary, non-emergency orders under" the Uniform Child

Custody Jurisdiction and Enforcement Act ("UCCJEA"). For the reasons that follow, we disagree.

## A. Standard of Review

Subject-matter jurisdiction is "the power of the court to deal with the kind of action in question[,]" *In re N.T.U.*, 234 N.C. App. 722, 724, 760 S.E.2d 49, 52 (citation omitted), *disc. review denied,* 367 N.C. 826, 763 S.E.2d 517 (2014), and, as a result, is "a threshold requirement for a court to hear and adjudicate a controversy brought before it," *In re M.B.,* 179 N.C. App. 572, 574, 635 S.E.2d 8, 10 (2006). Whether a court possesses subject-matter jurisdiction is a question of law, which this Court reviews de novo on appeal. *N.T.U.*, 234 N.C. App. at 724, 760 S.E.2d at 52.

When conducting de novo review, "this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *In re T.N.G.*, 244 N.C. App. 398, 402, 781 S.E.2d 93, 97 (2015) (citation and internal quotation marks omitted). However, unchallenged findings of fact are binding on appeal. *N.T.U.*, 234 N.C. App. at 733, 760 S.E.2d at 57.

## B. Analysis

On appeal, Respondent-Mother does not challenge any of the trial court's findings of fact, nor does she challenge the trial court's adjudications of Nancy as a neglected and dependent juvenile and Nell as an abused and neglected juvenile. Rather, her arguments are entirely concerned with the trial court's subject-matter jurisdiction over these proceedings.

Respondent-Mother contends that (1) the trial court erred by concluding that it had obtained home-state jurisdiction because North Carolina was not the home state at the inception of these proceedings, and (2) the trial court could not "create 'home[-]state' jurisdiction for the adjudication simply by passage of time." She also asserts that the trial court erred by failing "to consult with the Washington courts, obtain an order [from Washington] declining jurisdiction, and make appropriate findings to support its order" in which the court exercises jurisdiction "beyond temporary emergency jurisdiction[.]" This appeal thus raises the question of whether (and under what conditions) temporary emergency jurisdiction under the UCCJEA may eventually ripen into home-state jurisdiction.

### 1. *Subject-Matter Jurisdiction and the UCCJEA*

Subject-matter jurisdiction "is conferred upon the courts by either the North Carolina Constitution or by statute." *M.B.*, 179 N.C. App. at 574, 635 S.E.2d at 10 (citation omitted). Our Juvenile Code provides that the trial court "has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen. Stat. § 7B-200(a).

Additionally, "the jurisdictional requirements of the [UCCJEA] must be satisfied for a court to have authority to adjudicate petitions filed pursuant to our Juvenile Code, even though the Juvenile Code provides that the district courts of North Carolina have exclusive, original jurisdiction over any case involving a juvenile." *M.B.*, 179 N.C. App. at 574, 635 S.E.2d at 10 (citation omitted). "The

UCCJEA, which is designed to provide a uniform set of jurisdictional rules and guidelines for the national enforcement of child custody orders, is codified in Chapter 50A of the North Carolina General Statutes." *Id.* at 574–75, 635 S.E.2d at 10 (citation and internal quotation marks omitted).

Under the UCCJEA,

> a court of this State has jurisdiction to make an initial child-custody determination only if:
>
> (1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
>
> (2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under [N.C. Gen. Stat. §] 50A-207 or [§] 50A-208, and:
>
> > a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
> >
> > b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;
>
> (3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under [N.C. Gen. Stat. §] 50A-207 or [§] 50A-

208; or

> (4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

N.C. Gen. Stat. § 50A-201(a).

For the purposes of the UCCJEA, a "child-custody determination" is "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child" and "includes a permanent, temporary, initial, and modification order." *Id.* § 50A-102(3). " 'Initial determination' means the first child-custody determination concerning a particular child." *Id.* § 50A-102(8).

A child's "home state" under the UCCJEA is "the state in which [the] child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding[,]" including a proceeding on abuse, neglect, or dependency allegations. *Id.* § 50A-102(4), (7). A proceeding commences with "the filing of the first pleading[.]" *Id.* § 50A-102(5); *see, e.g.*, *T.N.G.*, 244 N.C. App. at 403, 781 S.E.2d at 97.

In this case, it is uncontested that the trial court did not have "home-state" jurisdiction pursuant to N.C. Gen. Stat. § 50A-201(a) at the commencement of the present proceedings, as neither juvenile had lived in North Carolina for six months prior to the filing of the petitions in this matter.

However, the UCCJEA also provides that the courts of this State may exercise "temporary emergency jurisdiction if the child is present in this State and the child

has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." N.C. Gen. Stat. § 50A-204(a). It is similarly uncontested that the trial court in this case properly exercised temporary emergency jurisdiction at the initiation of these proceedings. Accordingly, we must address the transition from temporary emergency jurisdiction to home-state jurisdiction under the UCCJEA.

## 2. *Temporary Emergency Jurisdiction and Home-State Jurisdiction*

Respondent-Mother first argues that "at the time of the petition, North Carolina did not have jurisdiction to make an initial custody decision" because it was not the children's home state pursuant to N.C. Gen. Stat. § 50A-201. Implicit in this argument is the proposition that a trial court cannot enter an initial child-custody determination while exercising temporary emergency jurisdiction pursuant to § 50A-204. This proposition is not supported by the text of the UCCJEA.

Section 50A-204(b) provides, in pertinent part:

> If a child-custody proceeding has not been or is not commenced in a court of a state having jurisdiction under [N.C. Gen. Stat. §] 50A-201 through [§] 50A-203, a child-custody determination made under this section becomes a final determination if it so provides, and this State becomes the home state of the child.

*Id.* § 50A-204(b). The plain language of this section thus contemplates that a court exercising temporary emergency jurisdiction may enter an initial child-custody determination, which "includes a . . . temporary . . . order." *Id.* § 50A-102(3). The trial

court thus had jurisdiction to enter the initial, temporary nonsecure custody orders.

However, Respondent-Mother proceeds to argue that "North Carolina courts do not have jurisdiction to enter an adjudication order while exercising temporary emergency jurisdiction." The key issue, then, is under what conditions North Carolina "becomes the home state of the child" in order for a temporary child-custody determination to "become[ ] a final determination if it so provides[.]" *Id.* § 50A-204(b). Respondent-Mother asserts that the trial court could not "create 'home[-]state' jurisdiction for the adjudication simply by passage of time." However, this Court has previously concluded otherwise.

Respondent-Mother acknowledges two cases in which this Court determined that a trial court possessed home-state jurisdiction over termination-of-parental-rights proceedings after initially exercising temporary emergency jurisdiction over child-custody proceedings. *See N.T.U.*, 234 N.C. App. at 728, 760 S.E.2d at 54; *In re E.X.J.*, 191 N.C. App. 34, 43–44, 662 S.E.2d 24, 29–30 (2008), *aff'd per curiam*, 363 N.C. 9, 672 S.E.2d 19 (2009).

In *N.T.U.*, this Court "determined that the trial court properly exercised temporary emergency jurisdiction over the custody of [the juvenile] initially," before noting that the juvenile had "lived in North Carolina with his foster parents" for over a year and a half without "any custody proceedings instituted, or custody orders entered, in any state other than North Carolina." 234 N.C. App. at 728, 760 S.E.2d at 54. Accordingly, this Court "conclude[d] that North Carolina became [the juvenile]'s

home state such that the trial court possessed jurisdiction to terminate [the r]espondent's parental rights pursuant to N.C. Gen. Stat. § 50A-201(a)." *Id.*

Similarly, in *E.X.J.*, this Court held that "the trial court had emergency jurisdiction to enter the initial nonsecure custody orders[,]" then recognized that, "[b]y the time of the filing of the petition and motion for termination of parental rights, [the children] and [the] respondent mother had been physically present in North Carolina for two years." 191 N.C. App. at 43, 662 S.E.2d at 29. Accordingly, "[g]iven the children's residency and the lack of any other custody proceedings or orders in other states, 'North Carolina became the home state wherein the trial court had jurisdiction under the UCCJEA to enter orders' terminating [the] respondents' parental rights." *Id.* at 44, 662 S.E.2d at 29–30 (quoting *M.B.*, 179 N.C. App. at 576, 635 S.E.2d at 11).

Respondent-Mother maintains that *N.T.U.* and *E.X.J.* do not control the case before us because "those cases involved [termination] petitions for which the respective departments of social services established standing by way of properly entered nonsecure custody orders." Yet both *N.T.U.* and *E.X.J.* relied upon our precedent in *M.B.*, which Respondent-Mother cannot successfully distinguish from the present case.

Unlike *N.T.U.* and *E.X.J.*, but like the present case, *M.B.* did not concern a termination-of-parental-rights proceeding commenced after a prior child-custody determination. Instead, *M.B.* concerned the trial court's authority to enter an initial

child-custody determination while exercising temporary emergency jurisdiction, then to recognize that North Carolina had become the child's home state and order that the child-custody determination become a final order pursuant to N.C. Gen. Stat. § 50A-204(b). 179 N.C. App. at 576, 635 S.E.2d at 11.

In *M.B.*, the child and both parents moved from New York to North Carolina between February and March of 2005, and in April of that year, DSS filed a juvenile petition alleging that the child was neglected. *Id.* at 572–73, 635 S.E.2d at 9. In June 2005, the trial court entered an order finding temporary emergency jurisdiction, adjudicating the child as neglected, and placing the child in the temporary custody of DSS. *Id.* at 573, 635 S.E.2d at 9. The trial court also ordered the parents and DSS to "provide any and all information and paperwork in relation to an alleged New York court proceeding concerning M.B., as such a proceeding may impact the trial court's subject[-]matter jurisdiction." *Id.*

During the process of appealing the trial court's temporary custody order, "DSS received a letter from Westchester County, New York, stating that there [we]re no pending matters or any orders regarding M.B." *Id.* at 574, 635 S.E.2d at 10. Accordingly, in October 2005, while the appeal was pending before this Court, the trial court entered an order "providing that (1) North Carolina [wa]s now the home state of M.B. because M.B. ha[d] been in North Carolina for over six months; and (2) the temporary child custody determination entered on 17 June 2005 [wa]s now the final order of custody." *Id.*

On appeal, this Court affirmed the trial court's initial invocation of temporary emergency jurisdiction. *Id.* at 576, 635 S.E.2d at 11. Furthermore, this Court determined that "any issue of temporary jurisdiction [wa]s now moot" and specifically cited the October 2005 order—as well as the fact that "M.B., M.B.'s mother, and [M.B.'s] father ha[d] been physically present in North Carolina for more than six months"—to support its conclusion that "North Carolina [wa]s now the home state under the UCCJEA[.]" *Id.* Although this Court in *M.B.* did not specifically refer to N.C. Gen. Stat. § 50A-204(b), it is apparent that the trial court's October 2005 order conformed with the provisions of that statute for the purposes of assuming home-state jurisdiction. *Id.*; *see also* N.C. Gen. Stat. § 50A-204(b).

DHHS contends on appeal that "[t]he relevant facts of *In re M.B.* are nearly identical to those in this case." We agree. As the trial court concluded—and as is supported by unchallenged (and therefore, binding) findings of fact, *N.T.U.*, 234 N.C. App. at 733, 760 S.E.2d at 57—"both juveniles and [Respondent-M]other had lived in the State of North Carolina without interruption for a period exceeding six months and there was no existing Custody Order from any other State" at the time the trial court entered the adjudication and disposition order. As such, and as the trial court declared in its order, "North Carolina . . . obtained Home State Jurisdiction" under the UCCJEA.

Lastly, DHHS advances a pair of unpublished opinions[4] as persuasive authority for the application of the holding in *M.B.* to this case. Indeed, in *In re K.M.*, this Court "conclude[d] that North Carolina became the home state wherein the trial court had jurisdiction under the UCCJEA to enter orders adjudicating the juveniles abused, neglected, and dependent" where the trial court made unchallenged findings of fact concerning "the court's exercise of emergency jurisdiction, the juveniles' residency in North Carolina for over six months, and the lack of any other custody proceedings or orders in any other state[.]" 228 N.C. App. 281, 748 S.E.2d 773, 2013 WL 3356835, at *3 (2013) (unpublished). And in *In re L.C.D.*, this Court concluded that "North Carolina became [the child]'s home state after six months" of her continuous residence in nonsecure custody in the state and "[i]n the interim, no custody proceedings were instituted or custody orders entered in another state." 253 N.C. App. 840, 800 S.E.2d 137, 2017 WL 2437033, at *3 (2017) (unpublished).

In the case at bar, the trial court properly concluded that it had home-state jurisdiction at the time of the adjudication and disposition order. In that Respondent-Mother does not otherwise challenge the trial court's findings of fact or conclusions of law, the trial court's order is properly affirmed.

### III.    Conclusion

---

[4] Although unpublished opinions do not have precedential value, "an unpublished opinion may be used as persuasive authority at the appellate level if the case is properly submitted and discussed and there is no published case on point." *Zurosky v. Shaffer*, 236 N.C. App. 219, 234, 763 S.E.2d 755, 764 (2014).

For the foregoing reasons, we affirm the trial court's order.

AFFIRMED.

Judges ARROWOOD and GRIFFIN concur.