ZACHARY, Judge.
 

 *400
 
 Respondent-father appeals from an order adjudicating his daughter " Tanya"
 
 [1]
 
 to be a neglected and dependent juvenile. On appeal respondent argues that the trial court erred by assuming emergency jurisdiction over the case; that "as a matter of due
 
 *96
 
 process, North Carolina does not have jurisdiction over children who are alleged to have been neglected in other states"; that the trial court erred by adjudicating Tanya to be a neglected and dependent child; and that the trial court erred in its dispositional order. We hold that the trial court had jurisdiction over this matter, and that the trial court did not err by adjudicating Tanya to be neglected or in its dispositional order, but that the trial court erred by adjudicating Tanya a dependent juvenile.
 

 I. Factual and Procedural Background
 

 Tanya was born in North Carolina in September 2005, and between 2005 and 2009, Tanya lived in North Carolina with either her mother Kia Collins or her paternal grandparents, Mr. and Mrs. Harris ("her grandparents"). When Tanya began kindergarten she lived with her mother, also in North Carolina, but continued to visit her grandparents on weekends and during school vacations. In 2013 Tanya started living with respondent, and in November 2013 respondent traveled to South Carolina with Tanya. For the next few months, respondent and Tanya lived with respondent's half-brother, Mr. Griffin, and Mr. Griffin's girlfriend. At some point in 2014, respondent returned to North Carolina without Tanya, and after respondent's departure, Mr. Griffin took Tanya to live with Mr. Griffin's stepmother, Ms. Hunter, in Spartanburg, South Carolina. While Tanya stayed with Ms. Hunter, she shared a bed with two other children: a girl and a seven year old boy. The younger boy tried to kiss Tanya and touch her private parts on several occasions, but Tanya successfully rebuffed the child's behavior. In May 2014, Ms. Hunter asked her mother-in-law, Ms. Grady, if she "want[ed] a little girl." Ms. Grady agreed to take Tanya and accordingly Tanya was moved again, this time to stay with Ms. Grady, also in South Carolina. Ms. Grady was seventy-eight years old and had limited mobility. In September 2014, Ms. Grady decided that she could no longer care for Tanya, due to Ms. Grady's advanced age
 
 *401
 
 and health limitations. Ms. Grady contacted Tanya's grandparents in North Carolina, who came to South Carolina in late September 2014 and removed Tanya to their home in Greene County, North Carolina.
 

 On 3 October 2014, Tanya's grandparents contacted the Greene County Department of Social Services ("DSS") to report that they had brought Tanya from South Carolina to Greene County, North Carolina, after their son, respondent, had left Tanya in South Carolina. On 16 October 2014, DSS conducted a meeting that was attended by respondent and Tanya's grandparents, but not by Tanya's mother. At the meeting, respondent admitted that he had left Tanya in South Carolina and that he was not presently employed. On 16 October 2014, DSS filed a juvenile petition alleging that Tanya was a neglected and dependent juvenile. DSS was awarded non-secure custody of Tanya and she was placed in the home of her grandparents.
 

 On 21 October 2014, the trial court held a hearing on respondent's motion to dismiss the petition for lack of subject matter jurisdiction. The trial court found that Tanya was left in South Carolina by respondent, transported back to North Carolina by her grandparents, and that no juvenile or domestic action concerning the juvenile was pending in South Carolina. The court concluded that it had temporary, emergency jurisdiction pursuant to N.C. Gen.Stat. § 50A-204 and denied respondent's motion to dismiss. The court continued nonsecure custody with DSS and placement with her grandparents. On 16 February 2015, the court conducted an adjudication and disposition hearing. On 16 March 2015, the trial court entered an order adjudicating Tanya as a neglected and dependent juvenile. The court's disposition order continued legal custody with DSS and placement of Tanya with her grandparents, established a plan of reunification with respondent, and directed respondent to take certain actions. Respondent appealed.
 

 II. Jurisdiction
 

 Respondent argues first that the court erred by exercising emergency jurisdiction in violation of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). Respondent argues that the court lacked emergency jurisdiction because there was no evidence that Tanya had been abandoned or that there was an emergency. We
 
 *97
 
 conclude that the trial court had jurisdiction under N.C. Gen.Stat. § 50A-201(a)(2) and therefore have no need to reach the issue of whether the trial court also had emergency jurisdiction.
 

 The issue of a court's subject matter jurisdiction may be raised for the first time on appeal.
 

 *402
 

 In re H.L.A.D.,
 

 184 N.C.App. 381
 
 , 385,
 
 646 S.E.2d 425
 
 , 429 (2007),
 
 aff'd per curiam,
 

 362 N.C. 170
 
 ,
 
 655 S.E.2d 712
 
 (2008). Whether a court has jurisdiction is a question of law reviewable
 
 de novo
 
 on appeal.
 
 In re K.U.,
 

 208 N.C.App. 128
 
 , 131,
 
 702 S.E.2d 103
 
 , 105 (2010). Under the
 
 de novo
 
 standard of review, this Court " considers the matter anew and freely substitutes its own judgment for that of the [trial court]."
 
 In re Appeal of the Greens of Pine Glen Ltd. P'ship,
 

 356 N.C. 642
 
 , 647,
 
 576 S.E.2d 316
 
 , 319 (2003) (citing
 
 Mann Media, Inc. v. Randolph Cty. Planning Bd.,
 

 356 N.C. 1
 
 , 13,
 
 565 S.E.2d 9
 
 , 17 (2002) ).
 

 "In matters arising under the Juvenile Code, the court's subject matter jurisdiction is established by statute."
 
 In re K.J.L.,
 

 363 N.C. 343
 
 , 345,
 
 677 S.E.2d 835
 
 , 837 (2009). The UCCJEA is a jurisdictional statute, and its provisions must be satisfied in order for a court to have authority to adjudicate abuse, neglect and dependency petitions filed under the Juvenile Code.
 
 In re Brode,
 

 151 N.C.App. 690
 
 , 692,
 
 566 S.E.2d 858
 
 , 860 (2002). In making this determination, we are not restricted to consideration of the jurisdictional basis cited by the trial court.
 
 Gerhauser v. Van Bourgondien,
 
 --- N.C.App. ----, ----,
 
 767 S.E.2d 378
 
 , 384 (2014) ("whether the trial court should or should not have made any changes to the original order as to jurisdiction, our inquiry is still the same: we must review
 
 de novo
 
 whether there was any ground for the exercise of subject matter jurisdiction under the UCCJEA").
 

 N.C. Gen.Stat. § 50A-201(a) provides in relevant part:
 

 Except as otherwise provided in G.S. 50A-204, a court of this State has jurisdiction to make an initial child-custody determination only if:
 

 (1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State; [or]
 

 (2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:
 

 a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a
 
 *403
 
 significant connection with this State other than mere physical presence; and
 

 b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships[.] ...
 

 N.C. Gen.Stat. § 50A-102(7) defines a child's "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." In this case, it is undisputed that Tanya, her parents, and her grandparents all lived in North Carolina from the time of Tanya's birth, with the exception of a ten month period from November 2013 through September 2014, when Tanya and respondent were in South Carolina. "We generally determine jurisdiction by examining the facts existing at the time of the commencement of the proceeding."
 
 Gerhauser,
 
 --- N.C.App. at ----,
 
 767 S.E.2d at 390
 
 . This proceeding was commenced on 16 October 2014 with DSS's filing of a petition alleging that Tanya was a neglected and dependent juvenile. At that time Tanya had been back in North Carolina for a few weeks. In this circumstance, neither South Carolina nor North Carolina was Tanya's "home state," because neither was "the State in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding."
 

 *98
 
 Because neither North Carolina nor South Carolina was Tanya's home state at the time the petition was filed, jurisdiction was not conferred on either state by the language in N.C. Gen.Stat. § 50A-201(a)(1) granting jurisdiction to a state that is "the home state of the child on the date of the commencement of the proceeding." N.C. Gen.Stat. § 50A-201(a)(1) also establishes jurisdiction for a state that "was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State[.]" Although South Carolina was Tanya's home state "within six months before the commencement of the proceeding" and Tanya was absent from South Carolina when the petition was filed, no "parent or person acting as a parent" was living in South Carolina when the petition was filed. As a result, neither North Carolina nor South Carolina had jurisdiction under N.C. Gen.Stat. § 50A-201(a)(1).
 

 N.C. Gen.Stat. § 50A-201(a)(2) confers jurisdiction to a state if "[a] court of another state does not have jurisdiction under subdivision (1) ... and:
 

 *404
 
 a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
 

 b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships[.]
 

 In this case neither North Carolina nor South Carolina was Tanya's home state and the evidence is undisputed that (1) Tanya, her parents, and her grandparents (who were "acting as" parents) all were living in North Carolina, and (2) substantial evidence was available in North Carolina concerning Tanya's "care, protection, training and personal relationships."
 

 If there is no home state, N.C. Gen.Stat. § 50A-201(a)(2) then directs that "a court of this State has jurisdiction to make an initial child-custody determination" where [a.] The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and [b.] Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships. This jurisdiction is normally referred to as 'significant connection' jurisdiction.
 

 Gerhauser,
 
 --- N.C.App. at ----,
 
 767 S.E.2d at 390
 
 . We conclude that the trial court had jurisdiction under N.C. Gen.Stat. § 50A-201(a)(2). Having reached this conclusion, we have no need to address the parties' arguments concerning emergency jurisdiction.
 

 III. Evidence of Events Occurring in South Carolina
 

 Respondent argues next that his state and federal right to due process was violated by Tanya's adjudication as neglected based on evidence of events that occurred in South Carolina, because respondent had no power to subpoena witnesses from South Carolina. In addition, respondent contends that it is "fundamentally unfair for a parent who is within the normative standards of parental fitness in another State ... to be deprived of his fundamental liberty interest in his child by the courts of North Carolina because the acts committed in the other State were considered [to] be below the normative standards of fitness in North Carolina." We disagree.
 

 Respondent bases his appellate argument on an alleged violation of his right to due process under the North Carolina and United States
 
 *405
 
 Constitutions. Respondent did not raise this issue before the trial court, or make any argument concerning his constitutional right to due process. "[I]t is well settled that a constitutional issue not raised in the lower court will not be considered for the first time on appeal. We therefore decline to address this issue."
 
 In re S.C.R.,
 

 198 N.C.App. 525
 
 , 530,
 
 679 S.E.2d 905
 
 , 908 (citing
 
 State v. Benson,
 

 323 N.C. 318
 
 , 321-22,
 
 372 S.E.2d 517
 
 , 519 (1988) ),
 
 appeal dismissed,
 

 363 N.C. 654
 
 ,
 
 686 S.E.2d 676
 
 (2009).
 

 Respondent also asserts that it is "fundamentally unfair" for Tanya to be adjudicated neglected based on events that occurred
 
 *99
 
 in South Carolina, on the grounds that his "parental fitness" was "within the normative standards" of South Carolina, but his actions are "considered to be below the normative standards of fitness in North Carolina." Assuming,
 
 arguendo,
 
 that two states could have differing "normative standards" of "parental fitness" as related to neglect of children, respondent fails to identify any differing "normative standards" relevant to the present case. It is undisputed that after respondent left Tanya in South Carolina, she was shifted among various adults whose relationship to the child was increasingly attenuated. Eventually, Tanya was sent to live with a seventy-eight year old woman who was respondent's half-brother's stepmother's mother-in-law. We discern no "normative standard" that would make such a haphazard arrangement acceptable in either North Carolina or South Carolina. This argument is without merit.
 

 IV. Adjudication of Neglect
 

 Respondent next contends that the court erred by concluding that Tanya was a neglected juvenile. We disagree.
 

 N.C. Gen.Stat. § 7B-101(15) defines a "neglected juvenile" in relevant part as a "juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned ... or who lives in an environment injurious to the juvenile's welfare[.]" "This Court has 'required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline' in order to adjudicate a juvenile neglected."
 
 In re C.M.,
 

 198 N.C.App. 53
 
 , 63,
 
 678 S.E.2d 794
 
 , 800 (2009) (quoting
 
 In re Helms,
 

 127 N.C.App. 505
 
 , 511,
 
 491 S.E.2d 672
 
 , 676 (1997) (citations omitted), and citing
 
 In re Safriet,
 

 112 N.C.App. 747
 
 , 752,
 
 436 S.E.2d 898
 
 , 901-02 (1993) ).
 

 "The allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence." N.C. Gen.Stat. § 7B-805 (2013). " 'The role of this Court in
 
 *406
 
 reviewing a trial court's adjudication of neglect and abuse is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact[.]' 'If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary.' "
 
 In re S.C.R.,
 

 217 N.C.App. 166
 
 , 168,
 
 718 S.E.2d 709
 
 , 711 (2011) (quoting
 
 In re T.H.T.,
 

 185 N.C.App. 337
 
 , 343,
 
 648 S.E.2d 519
 
 , 523 (2007) (internal quotation omitted),
 
 aff'd as modified,
 

 362 N.C. 446
 
 ,
 
 665 S.E.2d 54
 
 (2008) ).
 

 In this case, respondent asserts that the facts found by the trial court do not support its conclusion of law that Tanya is a neglected juvenile. The trial court's findings included the following:
 

 2. That the juvenile is in the custody of [DSS] and has been placed with Charles and Velma Harris.
 

 3. That the Court has talked with the juvenile in chambers with the consent of the father, the Guardian
 
 ad Litem
 
 and the petitioner.
 

 ...
 

 5. That the mother of the juvenile has taken no part in this matter.
 

 ...
 

 9. That the juvenile has been sexually abused on at least 5 occasions and was sleeping in the bed with a male.
 

 10. That in South Carolina the father of the juvenile left the juvenile with "Grandma Shirley" and "Grandma Mamie" and when the juvenile was at "Grandma Shirley's" house she slept in the same bed as a 7 year old boy.
 

 11. That the juvenile was left in the house of the uncle and the juvenile saw the uncle using marijuana in her presence and had seen the father using marijuana also.
 

 ...
 

 13. That the father went to North Carolina while the juvenile was in South Carolina.
 

 14. That the father would, on occasion, fall asleep on the couch and could not be awakened.
 

 *100
 
 ...
 

 *407
 
 16. That the juvenile has had a switch used on her bottom.
 

 Respondent's challenge to the evidentiary support for these findings is limited to his argument that the evidence does not support the trial court's characterization of Tanya's interactions with her younger cousin as "sexual abuse." The evidence showed that while Tanya stayed with Ms. Hunter, Tanya shared a bed with two other children, including her younger seven year old male cousin. Tanya's cousin tried on five occasions to kiss Tanya or touch her private parts, but Tanya was able to rebuff the child's behavior. Regardless of whether these incidents between two young children rise to the level of "sexual abuse," we conclude that this circumstance is significant evidence that Tanya "d[id] not receive proper care [or] supervision[.]" We further determine that the trial court's findings support a conclusion that Tanya was a "juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned ... or who lives in an environment injurious to the juvenile's welfare[.]" In addition, we conclude that the trial court's findings that,
 
 inter alia,
 
 Tanya had been present when adults used marijuana, had to sleep with a boy who behaved inappropriately, and was passed from one adult to another without any determination by respondent that Tanya's successive caretakers were fit guardians, establishes that Tanya was at a "substantial risk of harm or impairment." We conclude that the trial court did not err by adjudicating Tanya a neglected juvenile and that respondent's arguments on this issue lack merit.
 

 V. Adjudication of Tanya as a Dependent Child
 

 Respondent next contends that the court erred by adjudicating Tanya a dependent juvenile. A juvenile is dependent if his "parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen.Stat. § 7B-101(9) (2013). "Under this definition, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements."
 
 In re P.M.,
 

 169 N.C.App. 423
 
 , 427,
 
 610 S.E.2d 403
 
 , 406 (2005). "Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the [trial] court."
 
 In re B.M.,
 

 183 N.C.App. 84
 
 , 90,
 
 643 S.E.2d 644
 
 , 648 (2007) (citation omitted).
 

 In this case, the parties agreed that the trial court's decision on adjudication would be based solely on the content of the trial court's
 
 *408
 
 conversations with Tanya in chambers. Therefore, neither petitioner nor respondent presented evidence. There is no indication in the record that Tanya attempted to provide the trial court with information about respondent's ability to care for her, or that she would have been competent to do so. We agree with respondent that the order contains no findings to support the trial court's conclusion that respondent is unable to provide for the care or supervision of Tanya. We therefore reverse the adjudication that Tanya is a dependent juvenile.
 

 VI. Dispositional Order
 

 Respondent lastly maintains that the court exceeded its dispositional authority by ordering respondent to maintain stable employment and to obtain a domestic violence offender assessment and follow recommendations of the assessment. We disagree.
 

 N.C. Gen.Stat. § 7B-901 provides that the "dispositional hearing may be informal and the court may consider written reports or other evidence concerning the needs of the juvenile.... The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801 [.]" "We review a dispositional order only for abuse of discretion. 'An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision.' "
 
 In re B.W.,
 

 190 N.C.App. 328
 
 , 336,
 
 665 S.E.2d 462
 
 , 467 (2008) (quoting
 
 In re Robinson,
 

 151 N.C.App. 733
 
 , 737,
 
 567 S.E.2d 227
 
 , 229 (2002) ) (quoting
 
 White v. White,
 

 312 N.C. 770
 
 , 777,
 
 324 S.E.2d 829
 
 , 833 (1985) ).
 

 *101
 
 Nonetheless, the trial court's authority over the parents of a juvenile who is adjudicated as neglected is limited by N.C. Gen.Stat. § 7B-904, which provides that:
 

 (d1) At the dispositional hearing ... the court may order the parent ... to do any of the following: ... (3) Take appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent[.]
 

 For a court to properly exercise the authority permitted by this provision, there must be a nexus between the step ordered by the court and a condition that is found or alleged to have led to or contributed to the adjudication.
 
 In re H.H,
 
 --- N.C.App. ----, ----,
 
 767 S.E.2d 347
 
 , 353 (2014). In
 
 H.H.,
 
 we noted that the "[r]espondent-mother's inability to properly care for the juveniles may well be due to employment, financial, and/or housing concerns," but held that the trial court erred by
 
 *409
 
 ordering the mother to maintain stable housing and employment where " the petitions did not allege and the district court did not find as fact that these issues led to the juveniles' removal from Respondent-mother's custody or formed the basis for their adjudications."
 

 Id.
 

 The present case is distinguishable from
 
 H.H.,
 
 in that the addendum to the petition states in pertinent part that:
 

 [Respondent] acknowledged that he left [Tanya] with Mamie Grady in South Carolina and did not bring her back to North Carolina when he came back here. [Respondent]
 
 reports that he is unemployed
 
 and unable to care for [Tanya] at this time. [Respondent] stated that he and his wife have reunited, information [that Respondent's] parents dispute, but [DSS] has concerns of their
 
 admitted domestic violence history.
 
 To ensure the safety and well-being of [Tanya, DSS] is requesting non-secure custody of [Tanya] and that she be allowed to remain in the home of [her grandparents.] (Emphasis added.)
 

 The record evidence establishes a nexus between the circumstances that led to Tanya's removal from respondent's custody and the trial court's dispositional order directing respondent to maintain stable employment, to obtain a domestic violence assessment, and to cooperate with any recommendations. Accordingly, this argument lacks merit.
 

 For the reasons discussed above, we conclude that the trial court's adjudication and disposition orders should be
 

 AFFIRMED IN PART, REVERSED IN PART.
 

 Judges McCULLOUGH and INMAN concur.
 

 [1]
 

 To protect the juvenile's privacy, we refer to the child by the pseudonym "Tanya."