IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1028

Filed: 1 September 2020

Cumberland County, No. 19 JA 72

In the Matter of: V.M.

Appeal by respondent-mother from orders entered 22 May 2019 and 6 August 2019 by Judges Tiffany M. Whitfield and Cheri Siler-Mack, respectively, in Cumberland County District Court.  Heard in the Court of Appeals 10 June 2020.

> *Cumberland County Department of Social Services, by Michael A. Simmons, for petitioner.*
>
> *Benjamin J. Kull for respondent-mother.*
>
> *Alston & Bird LLP, by Ryan P. Ethridge, for the Guardian ad Litem.*

YOUNG, Judge.

Respondent-mother appeals from the trial court's order adjudicating V.M. ("Vinny")[1] neglected under N.C. Gen. Stat. § 7B-101(15) and ordering respondent-mother and respondent-father (collectively, "respondent-parents") to submit to random drug screens.  After careful review, we reverse and remand.

---

[1] A pseudonym is used to protect the juvenile's identity and for ease of reading.

I. Background

This action arises out of a Cumberland County Department of Social Services ("DSS") report concerning Vinny, who was admitted to the hospital with a blood alcohol level of 179 and diagnosed with acute alcohol intoxication. Respondent-parents are the biological parents of Vinny, who was four months old at the time of the incident at issue. The events leading up to the incident are as follows.

Respondent-mother is a stay-at-home mom and the primary caretaker of Vinny. In January 2019, respondent-mother took Vinny with her to Atlanta, Georgia for an aunt's funeral. Respondent-father was unable to accompany them on the trip due to a work conflict. Following the funeral service on Friday, 25 January 2019, respondent-mother and other family members gathered at a cousin's house, which had a full bar. While there, some members of the family began drinking. Respondent-mother and her brother, Domico, did not participate in the drinking, but were present in the home while the drinking took place. At some point, some of the family members who were drinking, including respondent-mother's sister Selenia, transferred the liquor into water bottles. Respondent-mother, Vinny, and Domico later spent the night at an Airbnb with Selenia.

The next morning, the group returned to their cousin's home to pick up their grandmother, who was going to ride back to North Carolina with Domico, respondent-mother, and Vinny. Before leaving, Domico grabbed some water bottles that he

believed were unopened from the kitchen counter of their cousin's home. During the car ride back to North Carolina, respondent-mother fed Vinny formula that she prepared using one of the water bottles. Domico testified that throughout this process he did not detect the smell of alcohol in the car. Vinny subsequently became fussy. Despite respondent-mother's attempts to console him, Vinny remained fussy even after they arrived home. Throughout all relevant times, Vinny was primarily in the care of respondent-mother.

Respondent-mother took Vinny to the hospital the next morning, where doctors determined he had alcohol in his system and diagnosed him with acute alcohol intoxication. After speaking with his sister about the situation, Domico smelled the water bottle respondent-mother had used to prepare Vinny's formula and detected an odor of alcohol. Domico then realized he must have mistakenly grabbed one of the water bottles containing liquor from their cousin's house, which respondent-mother later used to prepare Vinny's formula. The matter was referred to DSS, and Vinny was temporarily placed in the care of his paternal grandparents on 29 January 2019. Respondent-parents cooperated with DSS and worked to satisfy the agency's requirements.

On 18 February 2019, DSS filed a juvenile petition alleging that Vinny was neglected, dependent, and abused. DSS also made an ex parte request for non-secure custody of Vinny. The trial court denied this request, with the requirement that

Vinny remain placed in the care of his paternal grandparents. On 22 May 2019, the trial court adjudicated Vinny to be a neglected juvenile but dismissed the allegations of abuse and dependency. The trial court also ordered that Vinny be returned to the care of respondent-parents and required respondent-parents to submit to two random drug screens. On 12 June 2019, the trial court held a full dispositional hearing. The trial court found that there were no safety concerns with respondent-parents, and on 6 August 2019, ordered that Vinny remain in the home of respondent-parents. The trial court further ordered that respondent-parents submit to additional random drug screens, following their admission that if tested that day they would test positive for marijuana. Respondent-mother timely filed notice of appeal on 5 September 2019.

## II. Standard of Review

"The role of this Court in reviewing a trial court's adjudication of neglect . . . is to determine '(1) whether the findings of fact are supported by "clear and convincing evidence," and (2) whether the legal conclusions are supported by the findings of fact[.]' " *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (quoting *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000)), *aff'd as modified*, 362 N.C. 446, 665 S.E.2d 54 (2008). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." *Id.* "We review a trial court's conclusions of law *de novo*." *In re J.R.*, 243 N.C. App. 309, 312, 778 S.E.2d 441, 443 (2015).

### III. Analysis

In her first assignment of error, respondent-mother contends that the trial court erred in adjudicating Vinny a neglected juvenile. We agree.

Pursuant to N.C. Gen. Stat. § 7B-101(15) (2019), a neglected juvenile is:

> Any juvenile less than 18 years of age . . . whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare . . . .

"In general, treatment of a child which falls below the normative standards imposed upon parents by our society is considered neglectful." *In re Thompson*, 64 N.C. App. 95, 99, 306 S.E.2d 792, 794 (1983). However, not every act of negligence on part of the parent results in a neglected juvenile. *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003). "In order to adjudicate a juvenile neglected, our courts have additionally 'required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide "proper care, supervision, or discipline." ' " *Id.* (quoting *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-902 (1993)). Generally, North Carolina courts have found neglect where "the conduct at issue constituted either severe or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile." *Id.*

### A. Finding of Fact 16

5

In the trial court's order, it states, "the Court, after reviewing the evidence, record, testimony and arguments presented, makes the following findings by clear, cogent and convincing evidence" and lists facts numbered one through twenty. Of those twenty findings of fact numbers 16 and 18 are at issue. The trial court's finding of fact 16 states, in pertinent part, as follows:

a. Respondent Mother stated that the child was primarily in her care on 1/25/19 and 1/26/19; however, the child was in the presence of other adults during that time frame. That by admission via testimony of the parties, there was alcohol being placed in water bottles. That the mother, along with the child, and at least two additional adults traveled from the State of Georgia to the State of North Carolina while preparing a bottle for the minor child with a water bottle removed from the previous overnight stay.

b. That the maternal uncle stated that upon returning to the vehicle after the child was admitted to the hospital, he retrieved a water bottle from the backseat, and placing it to his nose, he could smell the odor of alcohol.

c. That Respondent Parents have made no attempts to remove the child from the paternal grandparents' care and physical custody.

Respondent-mother concedes the majority of the substance of this finding. Respondent-mother concedes that Vinny was primarily in her care; that alcohol was placed into the bottles on Friday, 25 January 2019; that respondent-mother, her brother, and their grandmother traveled from Georgia to North Carolina; and that Domico, after Vinny was admitted to the hospital, discovered the smell of alcohol in

one of the bottles. Respondent-mother does take issue with particular details of these findings – that it was not "the parties" but respondent-mother's brother and sister who testified; that the evidence only supported a determination that alcohol was placed in bottles on Friday, 25 January 2019, and not any other day; that the evidence did not support a determination that respondent-mother returned to North Carolina with anyone other than Vinny, Domico, and her grandmother – but she does not challenge the fundamental determinations raised therein.

We likewise hold that there was evidence to support the thrust of each of these findings in turn. They are, ultimately, a factual recitation of the events of that day. The issue is not with finding of fact 16, but with the conclusion of law derived therefrom.

### B. Finding of Fact 18

Respondent-mother contends that finding of fact 18 is actually a conclusion of law. We agree.

As a general rule, "[t]he labels 'findings of fact' and 'conclusions of law' employed by the lower tribunal in a written order do not determine the nature of our standard of review." *In re Estate of Sharpe*, 258 N.C. App. 601, 605, 814 S.E.2d 595, 598 (2018). Thus, "[i]f the lower tribunal labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' as a conclusion *de novo*." *Id.*

The trial court's finding of fact 18 states, in pertinent part, that:

7

> Based on the foregoing findings of fact, the Court finds that the juvenile [Vinny] was a neglected juvenile, within the meaning of N.C. Gen. Stat. § 7B-101(15), in that at the time of the filing of the Petition, the juvenile did not receive proper care, supervision, or discipline from the juvenile's parent, custodian, or caretaker and the juvenile lived in an environment injurious to the juvenile's welfare because Respondent Mother allowed the child to be in an environment in which alcohol was being poured into water bottles and the juvenile later tested positive for a high level of alcohol and was subsequently diagnosed with acute alcohol intoxication. That the acute alcohol intoxication occurred as a result of Respondent Mother using a water bottle containing alcohol to make a bottle of formula for the child. . . .

"The classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult. As a general rule, however, any determination requiring the exercise of judgment, or the application of legal principles, is more properly classified a conclusion of law." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations omitted). The first sentence of finding of fact 18 applies the facts of the case to the statutory definition of "neglected juvenile" and, through that reasoning, reaches a conclusion that Vinny is neglected. Consequently, this is more of a conclusion of law rather than a finding of fact. Indeed, this Court has held that determinations that a juvenile is neglected are "more properly designated conclusions of law and we treat them as such for the purposes of . . . appeal." *Id.*

As finding of fact 18, inasmuch as it determines Vinny's status as a neglected juvenile, is more properly considered a conclusion of law, we review it *de novo*, to

determine whether it is supported by the findings of fact. *J.R.*, 243 N.C. App. at 312, 778 S.E.2d at 443. It is here that the trial court's analysis falters.

The trial court did not find that respondent-mother knew, or even reasonably could have discovered, the danger of alcohol in the bottles. The trial court did not find that respondent-mother's behavior fell "below the normative standards imposed upon parents by our society." Perhaps most glaringly, the trial court did not find that Vinny suffered "some physical, mental, or emotional impairment," or that there was a substantial risk of the same.

Instead, the trial court summarily found that Vinny "did not receive proper care, supervision, or discipline from [his] parent . . . and [that he] lived in an environment injurious to [his] welfare" based solely on the fact that (1) Vinny was in an environment where alcohol was being poured into water bottles, and (2) Vinny was subsequently diagnosed with acute alcohol intoxication. In short, the trial court made a leap of logic which it did not adequately explain, and which this Court does not follow.

To be clear, we do not hold that the trial court could not have concluded that Vinny was neglected. Had the court engaged in more detailed analysis, offered additional factual findings, explained what steps respondent-mother could or should have taken, determined that the danger was in some way foreseeable, or even just offered more than a token conclusion, we might be able to uphold such a

9

determination. But the analysis in this case was cursory and conclusory, at best. The findings, such as they are, support a determination that a tragic and unfortunate accident occurred here – an accident which might have been preventable with the benefit of hindsight, but which respondent-mother had no way of knowing would occur, nor any means to prevent it, absent some form of precognition. The trial court's analysis is simply too cursory to be permitted to stand.

Upon our *de novo* review, we hold that the findings of fact in the trial court's order do not support its conclusion of law that Vinny is a neglected juvenile. Accordingly, we remand this order to the trial court. On remand, the trial court shall either make additional appropriate findings of fact, not inconsistent with this opinion, to support its conclusion, or properly comport its conclusion to fit the findings it has already made.

Because we reverse and remand the trial court's order, we need not address the remainder of respondent-mother's arguments.

REVERSED AND REMANDED.

Judge DILLON concurs.

Judge ARROWOOD dissents in separate opinion.

ARROWOOD, Judge, dissenting.

I respectfully dissent from the majority's holding reversing the trial court's adjudication of neglect. While the majority asserts the trial court's findings of fact do not support its conclusion of law that Vinny is a neglected juvenile, I would hold the trial court did make sufficient findings to support its conclusion.

As the majority correctly notes, "[i]n general, treatment of a child which falls below the normative standards imposed upon parents by our society is considered neglectful." *In re Thompson*, 64 N.C. App. 95, 99, 306 S.E.2d 792, 794 (1983). "In order to adjudicate a juvenile neglected, our courts have additionally 'required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide "proper care, supervision, or discipline." ' " *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003) (quoting *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-902 (1993)). Generally, North Carolina courts have found neglect where "the conduct at issue constituted either severe or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile." *Id*.

Here, in its finding of fact 18, the trial court found, in pertinent part, that:

> Based on the foregoing findings of fact, the Court finds that the juvenile [Vinny] was a neglected juvenile, within the meaning of N.C. Gen. Stat. § 7B-101(15), in that at the time of the filing of the Petition, the juvenile did not receive proper care, supervision, or discipline from the juvenile's parent, custodian, or caretaker and the juvenile lived in an environment injurious to the juvenile's welfare because

> Respondent Mother allowed the child to be in an environment in which alcohol was being poured into water bottles and the juvenile later tested positive for a high level of alcohol and was subsequently diagnosed with acute alcohol intoxication. That the acute alcohol intoxication occurred as a result of Respondent Mother using a water bottle containing alcohol to make a bottle of formula for the child. During the time that the juvenile obtained alcohol in his system, he was in the exclusive care of Respondent Mother. . . .

The majority asserts that finding of fact 18 is more properly considered a conclusion of law, and is thus subject to *de novo* review. "Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re A.K.D.*, 227 N.C. App. 58, 60, 745 S.E.2d 7, 8 (2013) (quotation marks and citation omitted). Though the majority contends finding of fact 18 is not supported by the trial court's other findings, I disagree.

The trial court made several findings leading up to its finding of fact 18, including the following:

> 15. That the Petitioner, the Guardian ad Litem, Respondent Mother, and Respondent Father made certain admissions of fact after having ample opportunity to consult with their respective counsel. That a written copy of those admissions was tendered to the Court. That those admissions are as follows:
>
> > a. *The Cumberland County Department of Social Services (CCDSS) received a Child Protective Services (CPS) referral on 01/27/2019 concerning the safety of the juvenile[].*

b. *On 01/27/19, Respondent Mother took the child to Cape Fear Valley Medical Center stating that the child had been fussing a lot.*

c. *On 1/27/19, the child tested positive for alcohol; his ethanol level was 242 mg/dl. The child was tested a second time and his blood alcohol level was 179. The child was diagnosed with acute alcohol intoxication.*

d. *Respondent Mother stated that the child was primarily in her care on 1/25/19 and 1/26/19.*

. . . .

16. That the Court made the additional finding of facts by clear, cogent, and convincing evidence as it relates to the verified Petition filed on February 18, 2019 and sworn testimony provided before the Court on today's date:

    d. *Respondent Mother stated that the child was primarily in her care on 1/25/19 and 1/26/19; however, the child was in the presence of other adults during that time frame. That by admission via testimony of the parties, there was alcohol being placed in water bottles. That the mother, along with the child, and at least two additional adults traveled from the State of Georgia to the State of North Carolina while preparing a bottle for the minor child with a water bottle removed from the previous overnight stay.*

    e. *That the maternal uncle stated that upon returning to the vehicle after the child was admitted to the hospital, he retrieved a water bottle from the backseat, and placing it to his nose, he could smell the odor of alcohol.*

- 3 -

> f. *That Respondent Parents have made no attempts to remove the child from the paternal grandparents' care and physical custody.*

(emphasis in original). In finding of fact 18, the trial court summarized its findings in findings of fact 15 and 16 and applied the law to those facts in order to reach its determination that Vinny was a neglected juvenile. The majority acknowledges the trial court's finding of fact 16 is supported by the evidence. However, it then proceeds to hold that finding of fact 18, which is based on finding of fact 16 and several of the trial court's other findings, is not supported by sufficient findings.

The majority appears to take issue with the fact that, in its view, the trial court did not make certain findings, including that: (1) respondent-mother knew, or even reasonably could have discovered, the danger of alcohol in the bottles; (2) respondent-mother's behavior fell "below the normative standards imposed upon parents by our society[;]" and (3) Vinny suffered "some physical, mental, or emotional impairment," or that there was a substantial risk of same. The majority further insists that, "[h]ad the court engaged in more detailed analysis, offered additional factual findings, explained what steps respondent-mother could or should have taken, determined that the danger was in some way foreseeable, or even just offered more than a token conclusion, [it] might be able to uphold such a determination." However, this Court has made clear that, in determining whether a juvenile is neglected, a parent's fault or culpability is not a determinative fact. *In re A.L.T.*, 241 N.C. App. 443, 451, 774

S.E.2d 316, 321 (2015). In addition, contrary to the majority's assertions, the trial court's findings make clear that respondent-mother's oversight led to four-month old Vinny needing to be hospitalized and treated for acute alcohol intoxication. The evidence in the record also supports this.

Respondent-mother's brother and sister both testified that family members, including respondent-mother's sister, were drinking liquor and pouring it into water bottles on Friday during a family gathering at their cousin's house. Respondent-mother, who was taking care of Vinny, was also present at the gathering while these activities were taking place. The next day, on the drive home from the environment in which alcohol had been poured into water bottles, respondent-mother fed Vinny formula she prepared using a water bottle taken from such environment. Due to respondent-mother's conduct, four-month old Vinny suffered some physical impairment or injury, namely, acute alcohol intoxication. Notably, when respondent-mother's brother smelled the water bottle in question, he was able to detect the odor of alcohol. Had respondent-mother been more attentive, she likely would have noticed that the water bottle had already been tampered with and its contents smelled like alcohol. Ultimately, this mistake "constituted either severe or dangerous conduct" which "caus[ed] injury . . . to the juvenile[,]" supporting a finding of neglect. *In re Stumbo*, 357 N.C. at 283, 582 S.E.2d at 258.

In finding of fact 18, the trial court's logical reasoning is clear as it applies the law to the facts gleaned from its previous findings to determine that Vinny was a neglected juvenile. I would thus hold that finding of fact 18 is supported by the evidence and the trial court's evidentiary findings, and would affirm the trial court's adjudication of neglect.

I would further hold that the trial court did not abuse its discretion in its dispositional order. Respondent-mother asserts the trial court abused its discretion when it ordered respondent-parents to submit to random drug screens and a substance abuse assessment. Pursuant to N.C. Gen. Stat. § 7B-904(d1)(3) (2019), "[a]t the dispositional hearing or a subsequent hearing, the court may order the parent . . . [to] [t]ake appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication." The trial court may also within its discretion order the parent to "undergo psychiatric, psychological, or other treatment or counseling directed toward remediating or remedying behaviors or conditions that led to or contributed to the juvenile's adjudication." N.C. Gen. Stat. § 7B-904(c). "For a court to properly exercise the authority permitted by this provision, there must be a nexus between the step ordered by the court and a condition that is found or alleged to have led to or contributed to the adjudication." *In re T.N.G.*, 244 N.C. App. 398, 408, 781 S.E.2d 93, 101 (2015) (citation omitted). This includes "order[ing] services which could aid 'in both understanding and resolving the possible underlying causes'

of the actions that contributed to the trial court's removal [or adjudication]." *Matter of S.G.*, __ N.C. App. __, __, 835 S.E.2d 479, 486 (2019) (quoting *In re A.R.*, 227 N.C. App. 518, 522, 742 S.E.2d 629, 632-33 (2013)).

Though respondent-mother argues the trial court abused its discretion because there was no evidence of a history of substance abuse or a drug-related parenting problem, I disagree. The day after Vinny was diagnosed with acute alcohol intoxication, respondent-parents tested positive for marijuana. Based on these facts, the trial court in its adjudication order exercised its discretion to order respondent-parents to submit to two random drug screens. Respondent-parents tested negative for those two tests, but refused to submit to a third. At the full dispositional hearing, respondent-parents admitted that if tested that day, they would test positive for marijuana. DSS then requested custody of the juvenile based on respondent-parent's admissions to testing positive for illegal substances. The trial court denied the motion; however, evidently sensing a problem with respondent-parents' inability to remain drug-free throughout the adjudication and disposition process, it pleaded with respondent-parents to "[j]ust don't smoke anymore for the next little bit," so that their case could be closed. Because respondent-parents admitted they would test positive for marijuana, and in light of the adjudication of neglect involving use of another intoxicant, I would hold the trial court's order requiring respondent-parents to submit to additional drug screens and another substance abuse assessment was not "so

arbitrary that it could not have been the result of a reasoned decision." *In re T.N.G.*, 244 N.C. App. at 408, 781 S.E.2d at 100 (citations omitted).  I therefore respectfully dissent.