IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-290

Filed 18 February 2026

Union County, No. 23JA000195-890

IN THE MATTER OF:  M.B.

Appeal by respondent-appellant-mother from order entered 12 November 2024 by Judge Erin S. Hucks in District Court, Union County.  Heard in the Court of Appeals 27 January 2026.

*Marc S. Gentile for petitioner-appellee Union County Division of Social Services.*

*Ogletree, Deakins, Nash, Smoak, & Stewart, P.C., by Vanessa N. Garrido, for guardian ad litem.*

*Parent Defender Annick Lenoir-Peek, by Sr. Assistant Parent Defender J. Lee Gilliam, for respondent-appellant-mother.*

STROUD, Judge.

Respondent-appellant-mother appeals a permanency planning order.  Mother contends the trial court erred by ordering her not to have contact with her child or discuss the case or people involved on social media.  Because the trial court's findings of fact regarding Mother's conduct fully support the restrictions, we conclude the trial court did not abuse its discretion in ordering Mother to have no contact with the child and not to post about the case or people involved on social media.  Furthermore, Mother waived any constitutional arguments regarding the social media provision.

Accordingly, we affirm.

## I.  Background

On 11 December 2023, the Union County Department of Social Services (DSS) filed an amended juvenile petition alleging Maggie was neglected and dependent.[1] On 29 February 2024, Maggie was adjudicated neglected and dependent, in part due to Mother's "emotional/mental health, parenting skills, substance use and child characteristics."  The allegations in the petition and determinations in the adjudication order are not relevant to this appeal.  Mother does not challenge the adjudication or the disposition except as to the provisions regarding contact with Maggie and the social media provision.  For purposes of this appeal, the following findings of fact and conclusions of law in the 12 November 2024 permanency planning order (Order) are relevant:

> 18. This [c]ourt had a hearing on May 7, 2024 in which the Order was filed on June 3, 2024. This [c]ourt did find, amongst other things:
> > (A)  "Visitation between the juvenile and the mother occurred on February 20, 2024, February 27, 2024, March 5, 2024, and March 12, 2024.  Those visits went well."
> > (B)  "On March 19, 2024, the mother appeared physically different during the visit and the social worker ended the visit 30 minutes early.  On that day, the social worker overheard the juvenile ask the mother why she was recording the visit and that it made

---

[1] Pseudonyms are used for every individual involved in this case without the use of brackets.  One of the main issues in this case was Mother's pattern of threats and disturbing comments regarding some of these individuals on social media, so we have opted not use real names throughout this opinion.

her uncomfortable."

(C)     "During the March 26, 2024 visit, it appeared to the social worker that the mother was visibly agitated. [Mother] screamed at the juvenile the SBI was involved and that her and the juvenile's life was in danger. Social Worker Hughes told the mother that her behavior was not appropriate and ended the visit. [Mother] appeared at that time to have forgotten how to leave the building and was very agitated when she left."

(D)     "It appears that the mother has been taking pictures and videos of various employees of the Department of Social Services and additionally, she has been taking pictures and videos of others, such as the GAL, while in the hallway of the courthouse. It also appears that she has done internet searches of individuals employed by DSS and the GAL."

(E)     "[Mother] did follow her former attorney, Michelle Oates, to Ms. Oates' home. She indicated to Social Worker Hughes that she fired Ms. Oates, but the Court notes that she cannot fire an attorney she did not hire."

. . . .

19. To address the identified need of emotional and mental health, [Mother] did complete psychological assessment with Dr. Greg Packard. Dr. Packard did examine [Mother] on June 25, 2024, July 3, 2024, July 8, 2024, July 31, 2024 and August 16, 2024. Amongst other things, Dr. Packard did find that:

(A)     "Consistent with [Mother]'s lifestyle, there are indications that she may abuse or depend on prescription medications, illicit drugs, or both. She likely uses these substances within recreational pattern of adolescent-like, and stimulus-seeking behavior. Also consistent with her personality style is the image of drug use as a symbol of disdain for conventional social values. Moreover, drug use flouts

establishment authorities and serves to express her assertive independence."

(B) In Dr. Packard's recommendations, he state[d]: "[Mother] may be convinced that if she were just left alone, she could work matters out on her own. However, this conviction can often lead to regression and recurrences of her less than socially acceptable behavior."

20. It appears from [Mother]'s testimony that she is participating in some sort of therapy. Her testimony is that she is going once per week for DBT therapy at Daymark as well as once per week for individual therapy and at least once per month with Dr. Owens with Atrium Behavioral Health.

21. Despite doing that and having that therapy, there have been several text messages sent back and forth between [Mother], the GAL Ms. Chase[,] and Social Worker Hughes that are incredibly disturbing to this Court.

22. [Mother] did send a text message in the group text messages that includes Social Worker Hughes, Katie Chase[,] and [Mother] in which [Mother] did screenshot and text picture of Social Worker Hughes's daughter to Social Worker Hughes and Ms. Chase. It followed with a text message that says "This is your baby? I bet you know she's safe and well. It would be nice if I knew my baby was. It's only humane to let me know. Just saying."

23. [Mother] also sent a text message in response to Social Worker Hughes sending a message stating "Maggie Bunch is a girl after my own heart. Maggie is growing and blossoming. As you can see, Maggie is going through a hat phase where she likes wearing stylish hats with dresses." The response to that text message was "F*** you bitch. Yes Maggie is great without mommy. No worries. Get the paperwork done. Terminate my rights."

24. [Mother] also sent a message, which included a

picture of what appears to be a desk with a picture of Maggie on it, stating "my blood is on your hands you bitches explain to my daughter why I'm dead I hope y'all are happy now goodbye".

25. Further, [Mother] also sent messages that said "Y'all lucky I'm not violent. It takes everything inside me to not kick your ass every time I see you. Everytime I hear your voice. Why am I on the summer school phone list? Is that your way of tormenting me?? F*** YOU Keep it up."

26. In a Facebook message, [Mother] posted "When I end up dead, I want all these f**** to be charged with conspiracy to commit murder. And child abuse. Because that's exactly what this is" and then listed the following names: [list of names].

27. During this court's hearing the [c]ourt did observe erratic behavior from [Mother], including but not limited to [Mother] packing up her things and storming out of the courtroom not once but twice, once during the court's ruling.

28. Although it appears that [Mother] is attempting to address some of her mental health issues, there is no resolution to those mental health issues as it stands today.

29. It is unclear to this [c]ourt whether [Mother] has addressed substance use issues because she has not obtained a substance use assessment or followed through with any potential treatment.

30. Contact between the juvenile and [Mother] is not in the juvenile's best interest as it does not appear, from at least some of the mother's text messages to Social Worker Hughes and Katie Chase, that she has been at various points in time suicidal or at least threatening to commit suicide and is putting the onus of informing her daughter on Ms. Hughes and Ms. Chase. In no way is this healthy for the juvenile to know or be exposed to.

. . . .

33. Pursuant to [North Carolina General Statute Section] 7B-906.2(d) the court makes the following findings:

. . . .

    (B)    The mother is not making adequate progress within a reasonable period of time under the plan.

. . . .

    (D)    The mother is not actively participating in or cooperating with the plan, DSS, and the guardian ad litem for the juvenile.

. . . .

    (G)    The mother is acting in manner inconsistent with the health or safety of the juvenile. . . .

. . . .

39. Visitation between the juvenile and the mother is not in the best interest of the juvenile.

. . . .

Based on the above findings, the [c]ourt CONCLUDES AS A MATTER OF LAW

. . . .

9. It is not in the best interest of the juvenile to visit with her mother, [Mother].

. . . .

11. Termination of parental rights should not be considered.

12. The undersigned makes the following specific findings as to the best plan of care to achieve safe, permanent home for the juvenile within a reasonable period of time.

THEREFORE, based on the above FINDINGS OF FACT and CONCLUSIONS OF LAW, the [c]ourt ORDERS that the following is in the best interest of the juvenile:

. . . .

     3. [Mother] shall have no contact with the juvenile. [Mother] may not go near the juvenile's school, residence or any other place she is known to be.

     4. [Mother] shall have no contact with Social Worker . . . [names redacted].

     5. [Mother] shall abide by previous orders not modified herein, including prior no contact orders.

     6. [Mother] shall not discuss this case or individuals associated with this matter on any social media platform, including but not limited to Facebook, Facebook Live or YouTube.

     7. To address visitation and/or contact with the juvenile, the mother may file Motion for Review at any time.

     8. [Mother] shall continue to address her identified needs of mental and emotional health, parenting, substance use and child characteristics by engaging in services as previously ordered.

    . . . .

The trial court granted Maggie's father full legal and physical custody. Defendant filed notice of appeal from the Order on or about 10 December 2024.

## II.   Communication

Mother makes three main arguments on appeal.

### A. No Contact

Mother first contends "[a] mother must be allowed to respond to a child's initiation of communication to her. This complete ban on [Mother]'s contact with her

daughter is an abuse of the trial court's discretion. It should be reversed and modified." Mother, in her approximately one-page argument, addresses abuse of discretion but does not challenge the findings of fact made by the trial court, so they are binding on appeal:

> This Court reviews disposition orders, including visitation determinations, for abuse of discretion. When reviewing for abuse of discretion, we defer to the trial court's judgment and overturn it only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. Further, appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law. Unchallenged findings of fact are binding on appeal. Whether the trial court's findings of fact support its conclusions of law is reviewable *de novo*. If the trial court's uncontested findings of fact support its conclusions of law, we must affirm the trial court's order."

*In re D.E.*, 298 N.C. App. 7, 10-11, 913 S.E.2d 447, 450 (2025) (citations, quotation marks, and brackets omitted).

Both Mother and DSS cite to *In re J.C.-B.*, 276 N.C. App. 180, 856 S.E.2d 883 (2021), wherein a mother was told not to contact her child and thereafter did. 276 N.C. App. at 183, 856 S.E.2d at 886. Mother correctly points out that in *J.C.-B*, the no contact disposition was vacated. *See id.*, 276 N.C. App. at 194, 856 S.E.2d at 893. But DSS also correctly points out, "[t]he *J.C.-B* facts are distinguishable from the facts of this appeal." *See generally id.* In *J.C.-B*, the trial court had placed the discretion for the no-contact disposition with the child's therapist but that discretion

must be exercised only by the trial court. *Id.* at 194, 856 S.E.2d at 893.

Here, the trial court exercised its own discretion and did not place the decision regarding contact with the child with anyone else. The trial court based this restriction on its uncontested findings detailing Mother's history of verbal abuse, profanity, and threats of violence directed at social workers, and in some instances in the presence and hearing of the child and the negative effects this behavior had on Maggie. For example. "[o]n March 19, 2024, the Mother appeared physically different during the visit and the social worker ended the visit 30 minutes early[;] [o]n that day, the social worker overheard the juvenile ask the mother why she was recording the visit and that it made her uncomfortable[;]" Mother appeared "visibly agitated" and "screamed at the juvenile the SBI was involved and that her and the juvenile's life was in danger. . . . [Mother] appeared at that time to have forgotten how to leave the building and was very agitated when she left[;]" (quotation marks omitted); "[d]espite doing that and having that therapy, there have been several text messages sent back and forth between [Mother], the GAL Ms. Chase and Social Worker Hughes that are incredibly disturbing to this Court[;]" including sending the social worker a photo of her own daughter and saying, 'This is your baby? I bet you know she's safe and well. It would be nice if I knew my baby was. It's only humane to let me know. Just saying[;]" when given information about how well Maggie was doing Mother responded, "F*** you bitch. Yes Maggie is great without mommy. No worries. Get the paperwork done. Terminate my rights[;]'" "[Mother] also sent a message, which

included a picture of what appears to be a desk with a picture of Maggie on it, stating my blood is on your hands you bitches explain to my daughter why I'm dead I hope y'all are happy now goodbye[;]"

> [Mother] also sent messages that said Y'all lucky I'm not violent. It takes everything inside me to not kick your ass every time I see you. Everytime I hear your voice. Why am I on the summer school phone list? Is that your way of tormenting me?? F*** YOU Keep it up[;]"

"In a Facebook message, [Mother] posted 'When I end up dead, I want all these f**** to be charged with conspiracy to commit murder. And child abuse. Because that's exactly what this is" and then listed names; "[d]uring this court's hearing the [c]ourt did observe erratic behavior from [Mother], including but not limited to [Mother] packing up her things and storming out of the courtroom not once but twice, once during the court's ruling[;] "[a]lthough it appears that [Mother] is attempting to address some of her mental health issues, there is no resolution to those mental health issues as it stands today[;]" "[i]t is unclear to this Court whether [Mother] has addressed substance use issues because she has not obtained a substance use assessment or followed through with any potential treatment[;]"

> [c]ontact between the juvenile and [Mother] is not in the juvenile's best interest as it does not appear, from at least some of the mother's text messages to Social Worker Hughes and Katie Chase, that she has been at various points in time suicidal or at least threatening to commit suicide and is putting the onus of informing her daughter on Ms. Hughes and Ms. Chase. In no way is this healthy for the juvenile to know or be exposed to.

(Quotation marks omitted.)

Based on the unchallenged findings of fact, we cannot say the trial court's decision to cease contact between Mother and Maggie was "so arbitrary that it could not have been the result of a reasoned decision." *In re D.E.*, 298 N.C. App. at 11, 913 S.E.2d at 450. Furthermore, in the future, Mother is free to file a motion to review as the trial court specifically noted in its Order. This argument is overruled.

**B. "Gag Order"**

Mother's next two arguments are regarding what she refers to as a "gag order" due to the trial court ordering she shall "not discuss this case or individuals associated with this matter on any social media platform, including but not limited to Facebook, Facebook Live or YouTube."

Mother contends the "gag order" "exceeded the trial court's dispositional authority" noting its limited power under North Carolina General Statute Section 7B-904 to "[t]ake appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent." N.C. Gen. Stat. § 7B-904(d1)(3) (2023), *amended* 2025. Mother attempts to frame this question under a *de novo* standard of review as she is challenging the trial court's failure to follow a statutory mandate. But Mother is actually challenging the authority for the trial court's disposition, but there is no legal question as to the trial court's ability to make dispositions. *Id.* Accordingly, "[t]he trial court's dispositional choices . . . are reviewed for abuse of discretion." *In*

*re A.P.W.*, 378 N.C. 405, 410, 861 S.E.2d 819, 826 (2021). Mother's need to address her own "emotional/mental health, parenting skills, substance use and child characteristics" were reasons Maggie was removed from her care and could not be returned to her, but Mother does not challenge the adjudication or the relevant findings of fact which resulted in Maggie's removal from her. *See generally* N.C. Gen. Stat. § 7B-904(d1)(3).

Mother is correct that the trial court's dispositional authority is not unlimited, but it is broad. *See* N.C. Gen. Stat. § 7B-904. The disposition must be based upon the particular circumstances of the parents and the child. *See generally id.* "For a court to properly exercise the authority permitted by this provision, there must be a nexus between the step ordered by the court and a condition that is found or alleged to have led to or contributed to the adjudication." *In re T.N.G.*, 244 N.C. App. 398, 408, 781 S.E.2d 93, 101 (2015). Here, Mother's actions noted in the findings of fact were part of the same types of behavior that "led to or contributed to" the adjudication. The trial court specifically found Mother threatened suicide, claimed child abuse, and then listed the specific names of people involved with the case Mother had targeted in her social media posts and threats. The trial court also found "[i]n no way is this healthy for the juvenile to know or be exposed to." The trial court did not order Mother not to use social media for other purposes nor did it order her not to speak to people about the case; all the trial court required was that she not discuss the case or the people involved in it *on social media*. Mother's established

pattern of threatening suicide, claiming child abuse, and then blaming specific DSS employees and others attempting to assist her and the child may discourage those people from working with Maggie and that would certainly not be in her best interest. In addition, as DSS points out, as Mother was posting her comments to publicly available social media platforms the child could potentially see, Mother's comments could be directly harmful to the child also. The trial court included this provision based on Mother's own conduct in the case. There was a nexus between Mother's behaviors and the trial court's limitation of Mother's discussion of the case and people involved on social media based on Mother's own pattern of abusive and threatening posts. The trial court did not abuse its discretion in ordering this provision. This argument is overruled.

### C. Constitutional Rights

Mother's final argument is that the "gag order" violated her constitutional rights. Despite her failure to object at trial, she suggests this Court should invoke Rule 2. Mother concedes she made no constitutional argument before the trial court. "[T]he existence of a constitutional protection does not obviate the requirement that arguments rooted in the Constitution be preserved for appellate review. Our appellate courts have consistently found that unpreserved constitutional arguments are waived on appeal." *In re J.N.*, 381 N.C. at 131, 133, 871 S.E.2d 495, 497 (2022). Furthermore, in our discretion, we see no basis to invoke Rule 2 to address any injustices or to expedite a case of public interest. *See generally* N.C. App. P. Rule 2

(allowing this Court to vary or modify the rules of appellate procedure in order to prevent manifest injustice or expedite a case of public interest). This argument is waived.

## III.    Conclusion

We conclude the trial court did not abuse its discretion in ordering Mother to have no contact with the child and not to post about the case or people involved on social media; furthermore, Mother waived any constitutional arguments regarding the social media provision. The Order is affirmed.

AFFIRMED.

Judges STADING and FREEMAN concur.